## WAHL v. N. E. NORSTROM ELECTRIC MFG. CO.

District Court, N. D. Illinois, E. D.    June 6, 1927.

### No. 5209.

1. **Patents ⬿328—1,487,189, claims 2, 5, and 23, for electrical hair clipper, held valid and infringed.**

Wahl patent, 1,487,189, claims 2, 5, and 23, for an electrical hair clipper, *held* valid and infringed.

2. **Patents ⬿328—1,487,189, claims 4, 9–11, 15–22, for electrical hair clipper, held void for want of novelty.**

Wahl patent, 1,487,189, claims 4, 9–11, 15–22, for an electrical hair clipper, *held* void for want of novelty.

3. **Patents ⬿316—Validity of claim on which defendant's construction does not read would not be determined.**

Court would not determine validity of patent claim on which defendant's construction does not read.

4. **Patents ⬿328—1,479,486, claims 1 and 2, for application of alternating current to power of driving hair clipper, held void for want of invention.**

Wahl patent, 1,479,486, claims 1 and 2, for application of alternating current to power of driving a hair clipper, *held* void for want of invention.

5. **Patents ⬿310(1¼)—Bill alleging plaintiff was inventor, that patent issued, and device was manufactured, held prima facie allegation of title.**

Bill of complaint in suit for infringement of patent, alleging plaintiff was true, original, and first inventor, and that patent issued to him, and that he and licensees had been manufac-

turing devices in accordance with patent and supplying them to trade, *held* prima facie allegation of title in plaintiff.

**6. Patents ⬤⟐181—Title granted by patent continues until divested by voluntary grant or other legal means.**

Title granted to inventor by the patent continues to exist until divested by voluntary grant or other legal means.

In Equity. Patent infringement suit by Leo J. Wahl against the N. E. Norstrom Electric Manufacturing Company. Decree for plaintiff.

Max W. Zabel, of Chicago, Ill., for plaintiff.

Wisner & Walsh, of Chicago, Ill., for defendant.

LINDLEY, District Judge. Plaintiff, Wahl, patentee in patents No. 1,471,536, October 23, 1923, No. 1,479,486, January 1, 1924, and No. 1,487,189, March 18, 1924, charges the defendant, N. E. Norstrom Electric Manufacturing Company, with infringement of each of said patents, and prays for an injunction and an accounting. The defendant asserts invalidity, anticipation, prior invention, and lack of infringement. Defendant also asserts that certain claims of patent No. 1,487,189, being for matter not set forth in the original application, are void, and also insists that there is not sufficient proof of title in plaintiff.

Patent 1,487,189 is chiefly relied upon by plaintiff, the claims in issue being 2, 4, 5, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, 22, and 23; but claim 5 is typical of what the court conceives constitutes Wahl's alleged invention. That claim is as follows:

"In a clipper the combination of a case, a clipper blade carried thereby, a movable clipper blade co-operating with the first mentioned blade, an electromagnet carried by the case, a circuit for the magnet, a spring carried armature car co-operating with the electromagnet, a yielding driving connection between the armature bar and the movable clipper blade, means for subjecting the yielding driving connection to tension, and means for adjusting the tension of the spring carried armature bar."

This device, described by the patentee as an electrical hair clipper intended for use in barber shops, but capable of use for clipping the hair of animals and other material, is so constructed as to be operated by an alternating electrical current through an electromagnet co-operating with an armature bar in such manner that the alternation of the current will drive the armature bar to operate the movable clipper blade transversely on the fixed blade. This armature bar is held in proper position with relation to the fixed clipper blade by means of a spring tension device, which also serves as the yielding driving connection mentioned in the claim quoted, and is a material element in Wahl's device. The armature bar is attached to the blade spring, which is mounted in the case by means of a bolt, which exercises its strength to force the blade spring against the end of an adjusting screw. The blade spring rests against a shoulder of the case, so that after the bolt is tightened the spring is forced into contact with the adjusting screw. This spring driving member is attached to and drives the movable clipper blade, which co-operates or reciprocates with the stationary blade. Screws provide for adjusting the movable blade so that it will press against the stationary blade. The remaining details of construction appear in the patent, and are not material to the discussion here.

Plaintiff's device was the first of the kind to be operated by an alternating current. It operates upon a 60-cycle alternating current, which constitutes a 120-cycle basis. Previous electric clippers operated upon a basis of 20 cycles per second. Wahl produced a device which successfully cut human hair through the means of the alternating electrical current, with an attachment so delicate in accuracy as to run to one ten-thousandths of an inch, operating upon a 120-cycle basis. He included in his device many elements that were old, but in his combination he made use of the yielding driving connection, which is absolutely essential to the successful operation of his clipper. By means of the adjusting screws he was able to prevent the difficulties that would otherwise attach, and accomplished a vibratory movement of the driving connection with the least possible friction and wear. These elements, in combination with the elements that are old, put together in this new device constituted a successful clipper, which has become of great commercial value.

In the prior art Palmer, No. 432,433; Burgon, No. 468,217; Martin, No. 874,522; Bowman, No. 1,383,977; Melchior (British patent) No. 27,356; Cox (British patent) No. 789; Preston (British patent) No. 15,-791—are all slow-moving devices for cutting animal hair; all except the last are of make and break variety, with the frequency of operation of .20-cycles. Consequently the delicacy of adjustment accomplished by

plaintiff was not present, nor was it essential. Preston operated his device pneumatically with a comparatively slow motion. Pryce, No. 985,547, and Broad, No. 1,197,338, are massage vibrating devices having protruding elements, the coils in which are adapted for connection with a 60-cycle vibrating current, so that the armature will vibrate at the same speed as the armature in the patent in suit; but they do not disclose the yielding driving connection with the delicate adjustment, or the two co-operating elements with their interrelating functions of Wahl's device.

Daley, No. 1,254,990, and Sangebusch, No. 1,303,975, constructed razors which moved slowly; Daley upon a make and break circuit, and Sangebusch upon an alternating current. The latter moved his blade transversely, as distinguished from Daley. Neither of them had the yielding driving connection in the sense those words are used by Wahl. Daley lacked two co-operating active elements. Neither of them show adjusting features necessary to achieve the delicate operation of Wahl. Stops, which Wahl avoids were indispensable in their devices. Niland constructed a clipper attachment for a massage vibrator, operated by a motor outside the instrument. His device was of slow-moving type, and of such character that friction and wear would manifestly result early in use, and meets none of the results achieved by Wahl.

During the consideration of Wahl's application, the Patent Office cited, and had before it, Palmer, Cox, Burgon, Bowman, Melchior, Hawtree, Grace, Bown (British), Sangebusch, Stearnes, Appleyard (British), Johnson, No. 1,351,041, Ashberry, No. 526,-359, and all the claims now relied upon were allowed over these references, evidently upon the theory that none of them achieved the yielding driving connection between the armature and the movable blade, whereby Wahl secured downward pressure of the armature bar, yielding to its seat as distinguished from a rigid holding. The reason for the use of such a blade apparently is that the driving blade should be held yieldingly to its work, because the power of the electromagnet in machines of this character is not great, and if the connection were rigid, as shown in the prior art, conditions would arise which would set up an excessive friction, and seriously interfere with the proper operation of the clipper, in view of the high rate of speed of the device. Many of the prior art devices are flexible shaft-driven machines, operating at an extremely low rate of speed. The court

finds no instance of a high speed clipper for human hair in the prior art. None of the old devices show a spring armature bar, none of them have the delicate adjustment features of Wahl, and the high speed vibrators and razors cited are entirely different combinations, which do not anticipate Wahl.

[1, 2] Defendant admits that the prior art devices cannot accomplish Wahl's result, but asserts that the latter acquired his skill from the prior art. If we take the elements of all of the prior patents and inventions cited, we cannot from a combination of selected elements from those devices construct the plaintiff's device, nor do they teach us the art of making plaintiff's device. In claims as to the structure described in his patent, and as claimed in claims 2, 5, and 23, the court is of the opinion that the plaintiff achieved invention, that he has not been anticipated, and that no prior invention has been cited against him. The court does not believe, however, that in claims 4, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 all of the elements constituting Wahl's invention appear, and is of the opinion that each of them is void for want of novelty.

[3] In patent 1,471,536 a typical claim is claim 1:

"In a clipper the combination of a handle portion, a stationary clipper blade carried thereby, a movable clipper blade co-operating with the stationary clipper blade, an electromagnetic coil mounted longitudinally in the handle portion, and an armature connected to the movable clipper blade to move the same, and means for mounting the armature to swing substantially transversely to the axis of the coil."

Inasmuch as defendant's construction does not read upon this claim, the court does not dispose of the question of validity thereof.

[4] As to patent No. 1,479,486, claims 1 and 2 are not materially different. Claim 1 is as follows:

"In a mechanism of the character described the combination of an alternating current electromagnet, an armature for the electromagnet, and vibrating at the rate of alternations of the operating current, and a mounting for the armature imparting thereto vibratory characteristics different from the alternations of the operating current to prevent overrunning."

The court believes these claims are void for want of invention. Apparently the patentee was doing little more than endeavoring to procure a patent on the application of the

alternating current to the power of driving a hair clipper. Such is not invention.

It does not appear that in the claims allowed there is any new matter. The original application of Wahl sufficiently covered all amendments and additions made.

There is little question concerning infringement. Defendant's construction plainly reads upon each of the claims held valid. [5, 6] Defendant claims that there is insufficient evidence of title in the plaintiff, but the bill of complaint alleges that the plaintiff is the true, original, and first inventor of the device; that he applied for the same; that a patent was issued to him; that he and his licensees are and have been manufacturing devices in accordance with the terms of the patent; and that they are supplying them to the trade. These facts when proved are prima facie proof of title in the plaintiff. The title granted to him by the patent continues to exist until divested by a voluntary grant or other legal means of divestment. As stated in Arrott v. Standard Mfg. Co. (C. C.) 113 F. 1014:

"Now, it is true that this complainant's ownership of the patent in suit at the date of the filing of his bill is not averred in the bill in the set phrases of the demurrer, but in substance and legal effect such ownership is averred. The bill particularly sets forth the making of the invention by the complainant; his fulfillment of the statutory terms, conditions, and requirements entitling him to letters patent therefor; his due application for the same, and the grant thereof to him; and, going beyond this, the bill avers that the complainant has been, and but for the defendant's infringement complained of and others of like character would still be, in the undisturbed possession, use, and enjoyment of the exclusive privileges secured to him by the patent; and he makes profert of the letters patent. Proof of the matters alleged would make out a prima facie case for relief. More, therefore, the complainant was not bound to aver. If since the issue of the patent he has lost title, by assignment or otherwise, that is a matter to be shown in defense. That the averments of the bill are sufficient to put the defendant upon its answer, I cannot doubt."

If the title of plaintiff under the patent has been lost there is nothing in the record so to show. Defendant has produced no evidence impeaching the prima facie title made.

There will be a decree finding claims 2, 5, and 23 of patent 1,487,189 valid and infringed, and injunction against defendant, as prayed, and a reference to the master for an accounting. The decree will follow the comments hereof with respect to the remaining issues.