### N. E. NORSTROM ELECTRIC MFG. CO. v. WAHL.

Circuit Court of Appeals, Seventh Circuit.
May 31, 1928.

Rehearing Denied September 13, 1928.

No. 3970.

Patents ⊜⟹328—1,487,189, claims 2, 5, 23, for hair clipper, held valid.

Wahl patent, No. 1,487,189, claims 2, 5, and 23 for an electric hair clipper, *held* valid and not anticipated in the art.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by Leo J. Wahl against the N. E. Norstrom Electric Manufacturing Company. Decree for complainant (19 F.[2d] 544), and defendant appeals. Affirmed.

Carl V. Wisner, of Chicago, Ill., for appellant.

Max W. Zabel, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. The District Court held claims 2, 5, and 23 of Wahl patent No. 1,487,189 valid. Appellant's sole contention is that the patent is invalid because of the prior art. Figure 1 of the patent, showing the parts of the clipper within the case, is reproduced:

Claim 5 reads:

"In a clipper the combination of a case, a clipper blade carried thereby, a movable clipper blade co-operating with the first mentioned blade, an electromagnet carried by the case, a circuit for the magnet, a spring carried armature bar co-operating with the electromagnet, a yielding driving connection between the armature bar and the movable clipper blade, means for subjecting the yielding driving connection to tension, and means for adjusting the tension of the spring carried armature bar."

The specification states that the clipper "is intended to be operated by an alternating electric current its principle of operation being the provisions of an electromagnet or magnets" (*2*) "co-operating with an armature bar" (*3*) "in such manner that the alterations of the current will vibrate the armature bar to operate the movable clipper blade" (*13*).

The stated objects are:

(a) "To so construct and mount the armature bar" (*3*) "that its tension against vibration may be varied."

(b) "To so connect the movable clipper blade" (*13*) "to the armature bar" (*3*) "that it will be held in proper position with relation to the stationary clipper blade" (*14*) "through the means of a spring tension device," (*9*) "the spring tension device serving also as a driving connection."

(c) "The provision of means" (*6, 19, 21*) "for adjusting the position of the armature bar" (*3*) "to vary the amount of pressure of the spring tension device" (*9*) "between the armature bar and the movable clipper blade."

The application had much attention in the Patent Office. Claims were repeatedly rejected on Palmer No. 432,433, Burgon No. 468,217, and many other patents not here cited. The Wahl device was put in interference with, and prevailed over, Reid No. 1,-446,211. All but one of the prior art patents are electrically operated animal hair clippers of the make-and-break kind, having not over 20 movements of the blade per second. Those patents date back to 1890. The fact that there is no evidence that those devices ever came into general use for any purpose through a course of nearly 30 years, and that no one before Wahl made an electrically workable human hair clipper is some evidence, we think, that the teaching of those patents was not very strong. Particularly is this true in view of the fact that there was an almost instant demand for the Wahl clipper and that 175,000 were sold in a short time.

Wahl, with an electric vibrator before him, worked a number of years and encountered many failures before making a successful device. After he got his clipper together, there was a rattling that had to be eliminated, and he found that the joint between the armature arm (*8*) and the moving blade (*9*) had to be a yielding one to follow the blade. He testified that, because of friction from the high speed, the blades could not be so screwed down as in prior art devices.

The Palmer patent issued in 1890. Its cutter bar, as shown in Figure 2 of the drawing, very much resembles the old sickle bar used in mowing machines many years prior to that time. Its "spring plates" are fingers that press down upon the cutter bar to keep it in place. The side to side movement is caused by a bar pivoted at one end, and connected at the other with the cutter bar. The bar is alternately attracted by two magnets, between which it passes, so that it is given a vibratory movement. The parts all work in one plane and the movements are not more than 20 per second.

In the Cox device (British patent No. 7989) what is called the knife bar, is pivoted near its middle. On one end is the moving cutting blade, and at the other the power is applied so that the cutting blade swings from side to side on the pivot as a fulcrum. The adjustment between the blades is made by a screw that presses down upon a spring on top of the moving cutting blade. The movements in this device are, as in the Palmer device, comparatively slow. Palmer and Cox are the closest references.

Operated under the 60-cycle alternating current, the speed of the moving parts in the Wahl device is at least six times the speed of the devices in the prior art. The moving parts in the Wahl device are wholly different from those in the prior art. Instead of the bar swinging upon a pivot, as in Palmer and and Cox, Wahl uses an armature bar *3*, fastened to the blade spring *4*, which extends, as one piece, to the back of the case *1*, where it abuts against a shoulder and is held rigidly in place by the bolt *5*, so that the spring blade is held against the adjusting screw *6*. The movement of the cutting blade is induced by the alternating current vibrating the armature bar through contacts at points intermediate the armature arm *8* and the end of the spring blade *4*, where it is attached to the frame by bolt *5*. The adjustment between the cutting blade *13* and the stationary blade *14* is made by means of the bar *19* and the screw *21*. In the Wahl device, the only connection between the cutting blade

*13* and the armature arm *8* is the yielding spring *9*, without which yielding connecting device the evidence shows the clipper would not work. We find nothing in the prior art that is similar, or that would function the same in a high speed device.

We are of opinion that the claims were not anticipated in the art.

The decree is affirmed.