## NORSTROM v. WAHL.
### No. 4218.

Circuit Court of Appeals, Seventh Circuit.
March 18, 1930.

Rehearing Denied May 28, 1930.

Carl V. Wisner, of Chicago, Ill., for appellant.

Max W. Zabel, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a decree restraining appellant from further infringing appellee's patent No. 1,487,189 on a hair clipper.

The patent covers an electrically driven hair clipper such as is commonly used in barber shops. Its validity has heretofore been sustained by this court and, on several occasions, by District Courts. See (D. C.) 19 F. (2d) 544; (C. C. A.) 27 F.(2d) 635, 636; (C. C. A.) 27 F.(2d) 637.

Noninfringement is the sole defense, and necessarily so because appellant was the president of the company that unsuccessfully contested the validity and scope of the claims in the suit disposed of by the second above cited case, and he verified the answer in that suit. On the previous appeal in this suit, [C. C. A.] 27 F.(2d) 637, the validity of the patent was again impliedly sustained. The statement and discussion of the patent appearing in these decisions makes an extended statement of the art unnecessary.

After the pronouncement of the last-cited decision, appellant modified his clipper twice, and now insists that the last three types of clipper (the one involved in the previous appeal to this court and the two subsequently manufactured by him) do not infringe any of the three valid claims of the patent.

Inasmuch as appellee's counsel contends that claim 2 is infringed by all three of these types of clipper, we quote only claim 2: "In a clipper the combination of a stationary clipper blade, a movable clipper blade co-operating therewith, an electro-magnetic blade moving mechanism carried by the carrier for the stationary clipper blade and a *yielding driving connection* between the blade moving mechanism and the movable clipper blade."

Appellant is not only bound by the decree which sustained the patent, but by the scope given the claims for the purpose of determining infringement. The patent was recognized as one entitling its claims to a broad construction. This court, in its previous opinion, said:

"The fact that there is no evidence that those devices ever came into general use for any purpose through a course of nearly 30 years, and that no one before Wahl made an electrically workable human hair clipper is some evidence, we think, that the teaching of those patents was not very strong. Particularly is this true in view of the fact that there was an almost instant demand for the Wahl clipper and that 175,000 were sold in a short time. * * *

"Operated under the 60-cycle alternating current, the speed of the moving parts in the Wahl device is at least six times the speed of the devices in the prior art. The moving

parts in the Wahl device are wholly different from those in the prior art. * * *

. "In the Wahl device, the only connection between the cutting blade 13 and the armature arm 8 is the yielding spring 9, without which yielding connecting device the evidence shows the clipper would not work. We find nothing in the prior art that is similar, or that would function the same in a high speed device."

The heart of the invention resides in the "yielding driving connection between the blade moving mechanism and the movable clipper blade," which novel element is necessary in order that the movable blade may travel at the high speed incident to the use of "an electro-magnetic blade moving mechanism."

Do appellant's clippers have a yielding driving connection between the blade moving mechanism and the movable clipper blade? That it is operated by an electro-magnetic blade moving mechanism cannot be denied. All of his clippers have a stationary clipper blade and also a movable clipper blade co-operating with the stationary one. The driving connection between the movable blade and the blade moving mechanism must be a yielding one, otherwise it would not successfully operate when moving at a rate of 120 cycles per second. Any "yielding driving connection" answers the calls of this element. We find nothing in the prior art which would justify a narrow or limited construction of this means.

Appellant contends that it is not, in this suit, bound by the previous opinions of this court but may show anew the prior art to narrow and restrict this language and thus avoid infringement. If this view is accepted, then the duration of patent litigation is indeed endless. Conceding, only for the purpose of argument, that such contention is correct, we find nothing in said prior art cited in this case that justifies a different construction than was placed on it in the previous opinion.

Nor can we accept the contention that the disclaimer of a large number of claims following the first decision of the district court in any respect embarrasses appellee in now arguing for a broad construction of the novel element which gave validity to his patent. None of the claims for which the patentee filed a disclaimer had as an element thereof this "yielding driving connection."

Appellee has been most ingenious in the arrangement of the parts of his various clippers, through which arrangement he has sought to avoid the effect of this language of claim 2. The means by which his yielding connection is accomplished differs from those adopted by appellee. But in each structure there is present a "yielding driving connection." In fact, it seems impossible that a clipper could successfully operate where the speed of the movable blade is so high without there being a yielding driving connection. It is but natural for one to think of a spring as the first and most likely means of securing such a yielding connection. Appellee makes use of springs. But the spring may be differently located. Likewise an arm with bifurcated extremities which engage the recess provided in one of appellant's movable clipper blades necessarily operates yieldingly. This is the means adopted by appellant in his structure known as Exhibit D 1. In Appellant's Exhibit C 1, springs were used and uniquely positioned, yet they were located between the blade moving mechanism and the movable clipper blade. As to the structure, evidenced by the clipper before the court on the last appeal, little need be said. Appellant abandoned its manufacture immediately after the court announced its opinion. Clearly it infringes the patent if the element in controversy be construed as we find it must be construed.

In disposing of the case, the district judge well observed:

"The defendant's contention is that the court has previously excluded from the patentee's invention anything other than a yield in the pressing of the blades together. The court did not intend so to imply in its prior opinion, and does not believe the plaintiff's patent can be so limited. That this driving connection, in order to be of value, must permit within limits a certain universal adjustment, which has a slight tendency to yield, is apparent from an examination of the plaintiff's patent and original device. Obviously such a connection is provided in each one of defendant's clippers.

"It is evident to the court that the last construction amounts to a contempt of the order heretofore entered in this court, but counsel have so earnestly and zealously presented their arguments in support of their contention of non-infringement that the court is not inclined to believe there is any intentional contempt. Consequently, no penalty will be imposed. * * *"

Other assignments of error we have examined, but they require no discussion.

The decree is affirmed.