## BROWN & SHARPE CO. v. WAHL.
### Nos. 5675, 5676.

Circuit Court of Appeals, Seventh Circuit.
June 23, 1936.

C. Paul Parker, of Chicago, Ill., and Fred O. Fish and Alfred H. Hildreth, both of Boston, Mass., for appellant.

Max W. Zabel, Arthur W. Carlson, Greek Wells, and Zabel, Carlson & Wells, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

Appellee brought suit to enjoin appellant from infringing patent No. 1,487,189, which covers a clipper driven by alternating electric current. Subsequent to the entry of the injunction, appellant was brought before the court for the alleged violation of an injunctional decree. It insisted, however, that the alleged infringing structure differed from the one which had been enjoined, and did not infringe the patent. The court held otherwise. Consequently, we have two appeals instead of one and the issue in each case is non-infringement. The controversy is narrowed by this and other courts' determinations, and acquiescence therein by appellant. The validity of the patent has been sustained by the courts at least five times: N. E. Norstrom Electric Mfg. Co. v. Wahl (C.C.A.) 27 F.(2d) 635; Wahl v. N. E. Norstrom Electric Mfg. Co. (D.C.) 19 F.(2d) 544; Norstrom v. Wahl (C.C.A.) 27 F.(2d) 637; Norstrom v. Wahl (C.C.A.) 39 F.(2d) 791; Norstrom v. Wahl (C.C.A.) 41 F.(2d) 910.

Appellant accepts these adjudications as to validity but asserts that the two clippers which it has been enjoined from making or selling do not infringe the patent. Appellant's concession of validity is by it limited to this extent—it denies validity to claim two in so far as it covers a clipper of a type described in the Niland patent, No. 1,329,675.

Claim two, the only one in issue, reads as follows:

"In a clipper
 the combination of
 "(1) a stationary clipper blade,
 "(2) a movable clipper blade co-operating therewith,
 "(3) an electro-magnetic blade moving mechanism carried by the carrier for the stationary clipper blade and
 "(4) a yielding driving connection between the blade moving mechanism and the movable clipper blade." (The figures are ours.)

Determination of infringement turns upon the presence or absence of element (4)—"a yielding driving connection between the blade moving mechanism and the movable clipper blade."

Appellant contends it has successfully avoided infringement of the claim by eliminating this yielding driving connection. In the construction of its electrically operated clipper it claims to have followed the teachings of the prior art represented by massage vibrators.

In order to determine the question of infringement it is necessary to again position the Wahl patent in the hair clipper art. In Norstrom v. Wahl, 39 F.(2d) 791, this court said:

"The patent was recognized as one entitling its claims to a broad construction. * * *

"The driving connection between the movable blade and the blade moving mechanism must be a yielding one, otherwise it would not successfully operate when moving at a rate of 120 cycles per second. *Any* 'yielding driving connection' answers the calls of this element. We find nothing in the prior art which would justify a narrow or limited construction of this means. * * *

"Appellee makes use of springs. But the spring may be differently located. * * *

"In disposing of the case, the district judge well observed: 'The defendant's contention is that the court has previously excluded from the patentee's invention anything other than a yield in the pressing of the blades together. The court did not intend so to imply in its prior opinion, and does not believe that plaintiff's patent can be so limited. That this driving connection, in order to be of value, must permit within limits a certain universal adjustment, which has a slight tendency to yield, is apparent from an examination of the plaintiff's patent and original device."

This court in N. E. Norstrom Electric Mfg. Co. v. Wahl, 27 F.(2d) 635, 636, said:

"Wahl, with an electric vibrator before him, worked a number of years and encountered many failures before making a successful device. After he got his clipper together, there was a rattling that had to be eliminated, and he found that the joint between the armature arm (8) and the moving blade (9) had to be a yielding one to follow the blade. He testified that, because of friction from the high speed, the blades could not be so screwed down as in prior art devices. * * *

"The parts [of prior art devices] all work in one plane and the movements are not more than 20 per second. * * *

"Operated under the 60-cycle alternating current, the speed of the moving parts in the Wahl device is at least six times the speed of the devices in the prior art. The moving parts in the Wahl device are wholly different from those in the prior art. * * *

"We find nothing in the prior art that is similar, or that would function the same in a high speed device."

We have again reviewed the art and find no reason to change the conclusions heretofore expressed. Appellant has cited no phase of the prior art not heretofore considered. We find that, when Wahl entered the field, hand operated hair clippers were in common use. There were, however, no electrically operated hair clippers. The Wahl clipper revolutionized the industry as it did the work of the hair clipping barbers. Hand operated clippers largely disappeared.

 Wahl was a pioneer, if not *the* pioneer, in this field. It may be fairly said that Wahl's electrically operated hair clipper was the first of its kind to be successfully operated. True, he did not greatly depart from the hand operated clipper so extensively used. Even to a layman it is apparent that Wahl's advance over the hand clipper was not a giant's stride. But neither patent nor scope of invention turns on the extent or the revolutionary character of the change.

Generally speaking, we presume it is fair to say that the character of the improvement determines patentability. The exceptions are so numerous, however, as to nullify the broad statement. It is common knowledge that a slight change at times produces startling and unforeseen results in mechanical combinations. And while patents do not cover results, the courts may at times look to results (sought as well as obtained) to determine whether the novelty evidences inventive genius rather than mere mechanical skill.

After the change any structure may seem simple. But the rear view is only one stance which the court may take to view the structure for which the producer claims patentability. There are several other approaches which must be made, and

several of them are quite as important as a competitor's judgment based on an after-the-event viewpoint. What are they? The success of the new product when used or operated commercially; the tribute paid it by others; the existence of a demand for such an article. How long had the demand existed? Why was it not satisfied? Was the demand satisfied by the device? If the court be legitimately doubtful, then, what success as represented by use and sales has attended the appearance of the new article? The court's approach must be from all angles to satisfactorily determine the issue of patentability. Novelty as such in a combination is only one factor.

In the case of Wahl, the courts have frequently and uniformly announced that inventive skill lay back of his electric clipper. Not only is the patent valid, but it has been given the status of a pioneer.

Undoubtedly that which made, not only for novelty, but for patentability in Wahl's clipper was the element "a yielding driving connection between the blade moving mechanism and the movable clipper blade."

The heart of this invention may truly be said to lie therein. Without it, novelty would not have existed. Without it, success would not have resulted. Inasmuch as validity of a pioneer discovery is thus lodged in the single element of a combination, the court is obliged to give to that element a somewhat liberal range of equivalents. The language of the claim calls for it. Assuming validity, a fair construction of the patent demands it.

Judge Lindley's approach and disposition of the question is so satisfactory that we quote from his memorandum: "In fact, it seems impossible that a clipper could successfully operate where the speed of the movable blade is so high without there being a yielding driving connection."

This observation must be successfully attacked by appellant. The trial judge was given the benefit of a demonstration in open court. Of it, he said:

"A reconstructed Niland device was operated before the court. The result was a disagreeable clatter, fatal to success. The connection there is loose, resulting in play, producing noise, friction and wear."

The Niland vibrator hair clipper was described as having no "yielding driving connection."

While the court's observation narrows the field wherein Wahl was to display his inventive genius, it nevertheless discloses the weakness of appellant's argument in support of non-infringement. Appellant has diligently endeavored to construct an electrically driven hair clipper without a yielding driving connection. With the Wahl patent and the Wahl clipper before it, it has attempted repeatedly to reconstruct the elements in such a manner as to avoid infringement.

If the trial judge's observation as above quoted is correct, and we think it is, we fail to see how the infringing construction could successfully operate without the equivalent of the yielding driving connection.

It would not illuminate the statement of facts, it seems to us, to reproduce the drawing. We content ourselves with the observation that we agree with the District Court when it said of the first alleged infringing clipper:

"The device of defendant includes a stationary clipper blade, carried by a member which is integral with an electro-magnetic blade-moving mechanism, consisting of a magnet and armature. What is asserted to be the equivalent of the patentee's 'yielding driving connection' consists of a blade-actuating arm, reaching from the movable blade to a point where it contacts the armature in operation, mounted upon a comparatively stiff spring, which, in turn, is mounted upon or made integral with the armature. This, counsel terms 'a floating mounting.' Contributing to the successful result are a coiled spring located near the armature, bearing upon the arm, and two other springs, contacting the movable blade and paralleling the longitudinal axis of the device. It is clear from the evidence that these springs made possible a yielding movement of the movable clipper blade at the end of the arm in all directions in orbits substantially at right angles to the longitudinal center line of the arm. This result is the desirable yielding connection, permitting within limits a certain universal adjustment which has a slight tendency to yield, so essential to success, described by the patentee and defined by the court in previous cases, unless it can be said that the invention is limited to specific forms of yielding connection other than that used by defendant. * * *

"In plaintiff's patent, the device shown in the drawings includes, as a yielding connection, an instrumentality of such character and of such material and construction as to be in itself a spring, which properly controls the connections, contacts, and operation. The yielding effect is so al-

most infinitesimally slight that it cannot be perceived by the naked eye. Concerning this, the Court of Appeals has·held that the patent is entitled to a broad construction; that 'any yielding connection answers the calls of this element'; that the then appellee 'makes use of springs'; but that 'the springs may be differently located.' To give full force to this language, this court must hold that the construction of defendant is within the claim so interpreted."

After the court decided the suit against appellant, it changed the construction of its clipper. Of this second type the court spoke informally at the close of the hearing. We adopt the language by him used on that occasion, which is as follows:

"Defendant comes into court and he says, 'I have eliminated this comparatively stiff springs upon which this arm is mounted and instead of that I have mounted the arm upon a pivot which is rigid; it permits a lateral movement but it forbids any up and down movement prevents and bars any up and down movement. But I do not think that result follows, (demonstrating). There is some movement up and down; each movement is possible, even on that pivot, because this is not an ultra stiff piece of metal; it is yielding. It fits into the same kind of a groove, and then we find the same two springs between which this arm fits in the movable spring and I find upon examination that movable blade is movable up and down.

"I am of the opinion, gentlemen, that although you have eliminated this one spring here, you still have the same result; you still have the equivalent of plaintiff's yielding connection, the element which this Court has repeatedly said and which the Court of Appeals has said two or three times, is absolutely essential to the commercial success of this device. * * *

" * * * I am not going to attempt to point out what the old devices did; I am not going to * * * try to differentiate, but I do know that in spite of the prior art, built for a different kind of operation, and in the face of that art, the United States Court of Appeals has said, that for the first time, plaintiff's device found success in the 120 cycle movement field, and that essential to that success or an essential part of it, is this yielding connection, without which, it is impossible for the device to work. I think the modification of the defendant demonstrates rather perfectly,

rather completely, the truth of that statement. And, as the Court of Appeals says, there is still a yielding connection without which plaintiff's device would not work. * * *"

The decree is affirmed.