## ELECTROLINE CO. v. RELIABLE ELECTRIC CO.

### No. 6643.

Circuit Court of Appeals, Seventh Circuit.

Dec. 30, 1938.

Rehearing Denied Feb. 15, 1939.

Chas. L. Byron and Russell H. Clark, both of Chicago, Ill., for appellant.

Max W. Zabel and Arthur W. Carlson, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

By this action appellee was charged with infringement of appellant's United States patent to Berndt No. 1,955,528. The defense was invalidity and non-infringement. It was later admitted that the patent was infringed by appellee, if valid. The court found it invalid and dismissed the bill. From that decree this appeal is prosecuted.

The invention relates to electrical connectors, and more particularly to a device for connecting electrical conductors without the use of solder or tools.

The objects are to provide a simple and economical connector for joining wires and the like to form a connection of high conductivity, whereby conductors may be quickly and easily joined in such manner as not to cut or materially injure the conductors; to provide a connector comprising a casing and gripping means in operative relation so that the connector forms a unitary device; and to provide such coupling, including a casing and gripping means, wherein the casing has a formation which locks the gripping means, thus constituting a unitary device having no separable parts which require manipulation and which are likely to be lost.

The connector comprises a casing or housing, having tapering end portions, and end openings of a diameter substantially less than the diameter of the casing substantially central of the same. The cross-sectional area of the walls at and adjacent the ends of this casing are materially greater than the cross-sectional area of the walls intermediate these points. Within the casing are located a plurality of wedge-shaped gripping members which are formed with a groove extending lengthwise of the

members. This groove is roughened by means of teeth, for the purpose of securely gripping the conductor wires, which is accomplished by the teeth embedding themselves into the surface of the wires, but not to such extent as to sever the wires or damage them. The gripping members are formed of any suitable metal having a medium hard surface, and are assembled within the casing in sets of three, each set having a frusto-conical shape for engaging the inner walls of the end portions of the casing. Each set, however, may be comprised of either two, three, four or five gripping members. For maintaining the sets in spaced relation and in contact with the tapering walls of the casing, a coil spring is provided which is adapted to engage the inner ends of the gripping members, thus forcing them into engagement with the tapered walls of the end portions of the casing.

With the elements located within the casing, it is only necessary to insert a conductor into one end of the casing, and another conductor into the opposite end of the casing, to form a solderless joint of high conductivity. Thus the conductors are firmly held by the gripping members, and any tension applied to the conductors will function to increase the intensity of the gripping relationship, since the gripping members are thereby forced into engagement with the tapering walls of the end portions of the casing, which further imbeds the teeth into the surface of the conductors.

The casing is formed from a length of imperforated metal tubing, of a substantially uniform diameter throughout its length. The first step in the formation of the finished casing is to spin one end of the tubing, so as to form the end portion into a tapering or frusto-conical portion, which is accomplished by the use of a suitable die having an opening or tapering form such as is required to give the necessary taper to the end portions. This spinning operation results in the increase of the cross-sectional area of the casing wall at and near its ends, so that these portions of the casing have increased strength to withstand the strain imparted to them by the gripping members, caused by tension on the conductor wires. The increase of the cross-sectional areas is caused by a surplus of metal at those points, which is due to the fact that the diameter of the tube at its ends is materially reduced while no elongation of the tube is permitted. The next step in the method of forming the connector comprises the insertion of the gripping members, suitably spaced by the coil spring, into the tube, and in holding the parts in operative relation while the other end of the tubing is spun in the manner above described. Thus the completed casing has the parts housed and permanently locked therein. There is but one claim.[1]

The validity of the patent is here challenged on the grounds that it lacks invention; that it has been anticipated; and that the claim is void in that it is for the mere function of a machine. In support of the court's ruling, appellee relies upon the file wrapper and the following prior art United States patents: Heaton, No. 206,321; Kisinger, No. 492,811; Docharty and Wagner, No. 668,830; Wood, No. 622,747; Fleeger, No. 831,548; Dyer, No. 889,776; Bajma-Riva, No. 1,203,565; Lehmann, No. 1,259,881; Wolfe, No. 1,429,263; and Stewart, No. 1,123,615.

In passing upon the question of validity, the District Court, we think, made a correct statement of the facts, and arrived at a proper and cogent conclusion in the following language which we adopt as our own:

"The principal contentions with reference to the elements comprising plaintiff's patent have to do with the wedges, the coil spring, and a metal tube, the ends of which are tapered to a smaller diameter than the middle, the walls of the tapered portions being thicker than the wall of the middle of the tube. The issue is the familiar one; patentable combination or merely skillful aggregation.

"Defendant has produced the file wrapper of the Patent Office. It appears that the

---

[1] "A connecter for connecting wires and the like comprising a casing formed from an integral piece of metal tubing. the end portions of said tubing being reduced in diameter to form tapering end portions, said casing having end openings for the insertion of wires into the casing, the walls of the end portions adjacent the openings being of increased thickness, and means housed in the casing for holding the wires against outward movement comprising, (sic) sets of wedge members located in and engaging the walls of each tapering end portion, and a coil spring located between the sets of wedge members for holding them in spaced relation and in contact with the tapering walls of the end portions."

Patent Office denied a patent on several occasions on the ground that the spring, wedges and tapered tube were old in the art in the light of several prior patents cited. Plaintiff thereupon abandoned several claims and amended the remaining claims to show the thickening of the walls of the tapered portions of the tube. The Patent Office again rejected the claims on the basis of the references above mentioned and on the ground that the thickening was merely an obvious expedient to strengthen the tube at the tapered portions, and furthermore, that thickening or strengthening of the tapered portion of the tube had been anticipated by a Swiss patent cited. Ultimately there was left only one claim in the patent, and plaintiff sought and obtained an interview with the Patent Office. The file wrapper recites that at the interview plaintiff stressed the thickening as the novelty which entitled him to a patent. Nothing was said at the interview about the combination of the spring and wedges in the tube.

"It is apparent that the patent is for a device in a crowded art and, as stated by plaintiff's counsel in the conclusion of his memorandum:

"' * * * Plaintiff's device is protected by a claim whose legal evasion was apparently simple.'

"On the assumption that the novelty in this patent lies in the element of thickening of the tapered wall of the tube, defendant would not be guilty of infringement if it simply built a device with a tube thickened throughout instead of merely in the tapered end portions.

■ "The Patent Office has said that thickening was merely an obvious expedient and did not constitute invention. The defendant goes further, and says that, since the prior patentee Fleeger said that the taper in his patent was accomplished by swaging, swaging necessarily included thickening. The evidence is that while swaging or reducing the diameter of the tube usually results in thickening of the wall in the reduced diameter, yet in some cases it may result in lengthening the tube, that is to say, the grains of metal may be allowed to flow longitudinally by not being prevented from so doing. Thickening would be a known result of swaging, but the point made by plaintiff is that Fleeger did not actually say that he thickened the walls in the tapered portions of the tube. However that may be, I agree with the Patent Office that thickening is an obvious device for strengthening. Mere support or thickening does not spell invention. Walker Mfg. Co. v. Illinois Brass Mfg. Co., 7 Cir., 265 F. 279, 280.

■ "Plaintiff has stressed the commercial value of the plaintiff's device and its acceptance by the trade. While the previous devices are still in use, it may be conceded that plaintiff's device is of great utility and has met with great commercial success. The Supreme Court has recently strictly applied the rule that it is only when invention is in doubt that these factors may be thrown in the scale. Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 473, 474, 55 S.Ct. 449, 79 L.Ed. 997; see, also, Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation et al., 294 U.S. 477, 486, 487, 488, 55 S.Ct. 455, 79 L.Ed. 1005.

■ "The disposition of this case is dependent upon the proceedings in the Patent Office and the holdings in the Altoona Case, supra, at page 486, 55 S.Ct. 455; the Paramount Case, supra, at page 473, 55 S.Ct. 449; Grinnell Washing Machine Co. v. Johnson Co., 247 U.S. 426, 431, 433, 434, 38 S.Ct. 547, 62 L.Ed. 1196, and Powers-Kennedy Contracting Corporation v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278. The finding, therefore, must be that the patent is invalid."

■ Appellant contends that the court erred in assuming that the invention was predicated solely upon thickening of the walls of the tapered portions of the tube or casing. We think it is hardly fair to say that the court made this assumption. It was admitted by both parties and the court that the claim disclosed a combination, that the disclosure was in a crowded art, and that all the elements were old in the art. It may be further admitted that there is not a single prior art reference which shows the combination, either with or without the thickening of the walls. However, the combination without the thickened walls was denied a patent by the Commissioner, and in an infringement suit we have no right to rule differently. It would seem that the presumption of invalidity in such case would be conclusive upon us. The addition of the element of thickened walls to the rejected combination secured a favorable ruling of the Commissioner, and the patent was issued. In a limited sense the addition of that element caused the patent to issue,

but it was not granted upon that element alone. The patent was predicated upon the entire amended combination, and we think the District Court so considered it. His ruling in effect was that the element of thickened walls added nothing of value to the rejected combination, and if this be true the patent must fail because the Commissioner has rejected the combination without the element of thickened walls.

The examiner observed that "* * * it is well known in the art that if a part is not strong enough for its proposed duty such parts may be strengthened by addition of material. So that adding material on the ends of Fleeger's sleeve would be obvious." The District Court agreed with this conclusion and remarked that "mere support or thickening does not spell invention." From this observation appellant concludes that the court placed itself in an inconsistent position, in that having admitted that thickening is an obvious device for strengthening, he must further admit that the claim was allowed for another reason. It urges that this reason was the combination of elements for performing a new and useful function in a more efficient manner. This is unquestionably true and we think the court's statements are consistent therewith. In effect it merely held that the added element was neither patentable nor new in the art, and that it added nothing of value to the rejected combination. We can not presume from the file wrapper that the Commissioner changed his mind with respect to his former ruling, but rather we conclude that he thought the added element, which of itself was not new or patentable, contributed something which rendered the claim valid. It is obvious that the added element either alone or in combination contributed nothing to the rejected combination except strengthening the tapered walls by thickening them, and the record discloses no necessity for such thickening. Indeed the device was made under the rejected claim by the identical method employed under the allowed claim. The walls were thickened precisely the same in both, although appellant made no claim for that element in the former. The thickened walls in both were caused by the spinning operation employed for the purpose of tapering the ends of the tube. When his prior claims were rejected the applicant merely added the element of thickened walls, and we find nothing in the record to indicate that the device would not work just as successfully without the thickened ends as with them, nor does it appear that that element adds anything of value to the claim.

It is contended by appellant that the commercial success of this device, which has been admitted, supports the validity of this claim, under the rulings of this court: Mount Vernon Car Mfg. Co. v. Pressed Steel Mfg. Co., 7 Cir., 291 F. 321; Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482; Milcor Steel Co. v. Reeves Mfg. Co., 7 Cir., 79 F.2d 29; Brown & Sharpe Co. v. Wahl, 7 Cir., 85 F.2d 458; Pyle Nat. Co. v. Lewin, 7 Cir., 92 F.2d 628; Peerless Equipment Co. v. Miner, Inc., 7 Cir., 93 F.2d 98. In each of these cases facts quite different from those here were presented, and we thought there was doubt concerning those patents which we do not find here.

Decree affirmed.