## NATIONAL PRESSURE COOKER CO. v. ALUMINUM GOODS MFG. CO.

### No. 9263.

Circuit Court of Appeals, Seventh Circuit. April 19, 1947.

Rehearing Denied July 16, 1947.

---

Charles L. Byron, Howard W. Hodgkins, and Gerrit P. Groen, all of Chicago, Ill., for appellant.

Geo. I. Haight and Edward A. Haight, both of Chicago, Ill., and Samuel H. Maslon, of Minneapolis, Minn., for appellee.

Before MAJOR, KERNER and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is a patent infringement suit based upon the Wittenberg patent 2,218,188, issued October 15, 1940 to plaintiff, entitled "Pressure Cooker." Both plaintiff and defendant are engaged in the manufacture of pressure cookers and other cooking utensils. The patent contains six claims. Plaintiff's suit was predicated upon claims 1 and 2. The defendant counter-claimed, alleging that all of the claims were void, but if valid were not infringed. The court below held claims 3, 4 and 5 invalid. The court made findings of fact and conclusions of law and entered the judgment appealed from.

No cross appeal has been taken and the holding of invalidity as to claims 3, 4 and 5 is not here involved; in fact, since judg-ment below, plaintiff has filed a formal disclaimer as to these three claims. The contested issues before this court theretofore arise by reason of defendant's contention that claims 1, 2 and 6 are invalid for lack of invention and that in any event claims 1 and 2 are not infringed by defendant's accused device.

As to the subject matter of the patent, the patentee in his specification states:

"This invention relates to new and useful improvements in pressure cookers generally, and more particularly to a novel means for sealing the connection between the cooker body and cover."

As to the existing state of the art, he states:

"Pressure cookers, as now commonly constructed, are usually provided with a plurality of screw devices or other clamping elements for securing the cover to the cooker body in leak-tight relation. Such securing devices are rather inconvenient to manipulate, and obviously add to the cost of manufacture. It is therefore desirable that means be provided whereby the cover may be readily and conveniently applied to the cooker body and secured thereto in seal-tight relation, without requiring the manipulation of several securing elements, each time the cover is secured to the cooker body or removed therefrom."

As to the primary object sought to be attained, he states:

"An object of the present invention therefore is to provide in combination with a container provided with a suitable cover, a simple and inexpensive means for securing the cover to the cooker body in seal-tight relation, which does not require the manipulation of a plurality of separate securing elements, each time the cover is applied to the cooker body or removed therefrom."

Further specified objectives might be more appropriately designated, so we think, as the manner and means by which the primary objective was to be accomplished.

Admittedly, all of the elements of the claims in suit are old. The court so found. In other words, they represent a combina-

tion of old and well-known elements. The question at once arises as to whether their combination in the manner claimed constitutes invention or merely an improvement properly attributable to the skill and knowledge possessed by those familiar with pressure cookers and similar devices.

The findings of the lower court insofar as they relate to the validity of claims 1 and 2 state that they "are drawn to a new pressure cooker having a utility not possessed by any prior pressure cooker"; that they "define a new combination and arrangement of elements which produced a new result"; that they "define novelty and invention over all of the prior art introduced in evidence"; that they "define a pressure cooker having a simplicity and safety of operation not found in any prior art pressure cooker"; that they "define a pressure cooker the cost of manufacture of which is twenty per cent (20%) less than the cost of manufacture of prior wing-nut or band type pressure cookers of comparable capacity," and that they "define a pressure cooker requiring less expense for repairs and servicing than prior wing-nut or band type pressure cookers." The court also found a ready acceptance by the public of plaintiff's pressure cookers and the commercial success resulting from their manufacture and sale. The pertinency of this latter finding will subsequently be considered.

In the main, we are of the view that the record supports these findings. Certainly the record discloses that plaintiff's cooker manufactured under the patent in suit possessed a greater utility than any of its predecessors, it was safer, simpler and easier to operate, cost less to manufacture and required less expense for repairs and servicing. We are of the opinion, however, that the record fails to support the finding that "a new result" was produced. In fact, we think that such was not the case. The purpose to be served by any pressure cooker is to transform raw foods into those fit and proper for human consumption. We find nothing in the record to indicate but that this result was satisfactorily obtained by cookers in existence and use at the time of plaintiff's claimed invention. This view is strongly supported by the testimony of plaintiff's witness, Kelley, employed as a director of plaintiff's test kitchen, whose experience with pressure cookers commenced in 1930. The advantages of plaintiff's cooker as stated by this witness relate solely to ease of operation, speed of opening and closing the cooker, ease of cleaning and safety. This witness testified that these desirable features were not found in prior cookers. Significantly, however, she made no claim that any different or better result was obtained. Neither did any other witness, so far as we are aware, make such a claim. In fact, it is not seriously urged in this court that such was the case.

Assuming that plaintiff's disclosure may properly be credited with all the advantages claimed, are they such as to justify the claim of invention? While we suppose this question like many others with which courts are confronted must be determined by the particular facts of the case, yet there are some general principles announced by the Supreme Court which may well be noted. The cases to which we shall refer were all concerned with combination claims, the elements of which were old in the art, where the advantages resulting therefrom were relied upon to show invention.

In Reckendorfer v. Faber, 92 U.S. 347, 356, 23 L.Ed. 719, the court stated:

"An instrument or manufacture which is the result of mechanical skill merely is not patentable. Mechanical skill is one thing: invention is a different thing. Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable."

The principle thus announced in this old case was recently quoted with approval in Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58.

In Hollister v. Benedict Mfg. Co., 113 U.S. 59, 70, 5 S.Ct. 717, 723, 28 L.Ed. 901, the court stated:

"This is what we ascertain to be the precise idea embodied in the invention described and claimed in the patent, and which, although we find to be new in the sense that it had not been anticipated by any previous invention, of which it could

therefore be declared to be an infringement, yet is not such an improvement as is entitled to be regarded in the sense of the patent laws as an invention."

In Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76, the court in response to the contention that the apparatus was new and useful stated:

"So, it is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the Constitution and the statute, amount to an invention or discovery."

In Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005, the court stated:

"An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art. * * * The patentees brought together old elements, in a mechanism involving no new principle, to produce an old result, greater uniformity of motion. However skillfully this was done, and even though there was produced a machine of greater precision and a higher degree of motion constancy, and hence one more useful in the art, it was still the product of skill, not of invention."

In Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58, the court stated:

"We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful,' it must also be an 'invention' or 'discovery.' * * * Tested by that principle Mead's device was not patentable. We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution, Art. I, § 8 authorizes Congress to reward. He merely incorporated the well-known thermostat into the old 'wireless' lighter to produce a more efficient, useful and convenient article. [Citing case.] A new application of an old device may not be patented if the 'result claimed as new is the same in character as the original result' [citing case] even though the new result had not before been contemplated."

Thus there may be adduced from these decisions of the Supreme Court, old and recent, that a combination patent resulting in an improvement will not be sustained merely because the apparatus described "may increase the convenience, extend the use, or diminish expense" (Reckendorfer), or be "new in the sense that it had not been anticipated by any previous invention" (Hollister). Neither is it "enough that a thing shall be new, in the sense that in its shape or form in which it is produced it shall not have been before known" (Thompson), or because it is "more useful in the art" (Altoona), or even where the functions performed by the combination "[were] new and useful" even though the article produced is "more efficient, useful and convenient" (Cuno).

It thus appears from the principles announced by the Supreme Court that an improvement or advantage resulting from a combination of old elements, especially where no new result is obtained, is ordinarily credited to mechanical skill rather than invention. This of course is no iron clad rule determinative of all situations but it does mean, so we think, that a patentee who relies upon improvement and advantage, as does the plaintiff in the instant case, occupies a precarious position when attempting to uphold the validity of his patent.

The File History of the patent in suit discloses that it traveled a rough and rugged course through the Patent Office. The claims were on numerous occasions denied over the cited prior art but the patentee persistently pursued his objective, and after numerous amendments to his claims and conferences with the Patent Office the claims were finally allowed.

Claim 1 as allowed is as follows:

"In an apparatus of the class described, a body provided with a laterally extending operating handle, a seat in the upper portion of said body, a cover for said body

having an annular sealing element secured to and projecting from the cover and adapted to engage said seat, a laterally extending operating handle on the cover, cam means *associated with the cover and body and adapted to be concealed by the cover when on said body member, said cam means* made operable by relative rotation of the cover on said body, by manipulation of said handles, thereby to cause the sealing element to engage said seat and provide a seal between said body and cover, said handles being so arranged that when they are disposed, one closely adjacent and over the other to form in effect a single handle for the vessel, the cam means is rendered operative to secure the cover to said body, and when the cover handle is disposed at an angle with respect to the body handle, the cam means is rendered inoperative and the cover is released from said body."

The claim, omitting the italicized phrase, was rejected by the Patent Office as not disclosing invention over the prior art. The claim, however, after amendment by inserting the italicized phrase, was allowed.

Claim 2 insofar as now material is substantially the same as claim 1. It was allowed after an amendment inserting the following phrase, "associated with the cover and body and adapted to be concealed by the cover when on said body member, and present an unbroken circumferential line therebetween, said cam means." This claim, like claim 1, was disallowed over the prior art before the insertion of this amendment. It will be noted that the amendment which induced the allowance of this claim is exactly the same as the amendment which induced the allowance of claim 1, with the following additional words, "and present an unbroken circumferential line therebetween."

Claim 6 was also allowed after the insertion of certain amendments which differ only in phraseology but not in principle from the amendments by which was obtained the allowance of claims 1 and 2. Previous to such amendments claim 6 had also been disallowed over the prior art.

A number of patents were cited in the Patent Office against the claims involved, including Ronge (Ger.) 645,702, issued June 2, 1937; Fritsch (Ger.) 659,981, issued May 13, 1938; Caver 1,568,798, issued January 5, 1926; Kroupa 1,369,249, issued February 22, 1921. The Examiner in disallowing claims 9 and 10 (1 and 2 as allowed) found claim 10 unpatentable "over Fritsch in view of Ronge. No invention would be involved in securing the sealing element of the former to the cover as done by the latter," and rejected claim 9 for the same reason. Claim 16 (6 as allowed) was rejected by the Examiner "as unpatentable over Kroupa in view of Caver and Ronge, all of record." The Examiner, in connection with such rejection, stated:

"In the pressure cooker of Kroupa the cover is locked on by rotation with respect to the body member to engage cam means 21, 27. In Caver two sections are locked together by relative rotation accomplished by means of handles 10 which in the locked position are disposed one over the other; in the unlocked position, at an angle with one another. It would be obvious to provide cover and body of the cooker of Kroupa with outwardly extending handles for facilitating relative rotation as taught by Caver. Flexible sealing means or gaskets are well known in the art as indicated by Ronge; it would be obvious to provide Kroupa with such means instead of the metal to metal seal 25, 18 therein."

Claim 16 was amended and claims 9 and 10 reconsidered. They were all again disallowed. In connection therewith the Examiner stated:

"Claim 16, as amended, is rejected as unpatentable over Kroupa in view of Caver and Flanders. It would be an obvious expedient to provide the lid and body of Kroupa with outwardly extending handles to give a better purchase for relative rotation, and to dispose said handles one over the other would involve no invention in view of Caver. A mere substitution of equivalents would be involved in replacing the metal sealing means of Kroupa with the flexible sealing means of Flanders.

"Claims 9 and 10 are, upon reconsideration, rejected on the same grounds as claim 16."

The claims were again amended and finally allowed in the manner heretofore described. It is interesting and we think

material to note the statement of counsel for the patentee made in connection with the amendments to the claims in suit which resulted in their allowance. He stated:

"These claims as now amended clearly bring in the feature of the smooth unbroken surface when the cover is applied to the body or container. This is a valuable feature of applicant's invention since the device is not only more pleasing in appearance but is devoid of all projections and recesses which are apt to collect dust and dirt and also particles of the food being cooked."

Further, it was urged that "in order to further distinguish over these three references [prior art patents on which the claims had theretofore been denied], each of the claims has been amended to point out that applicant's cam means for locking the cover to the body is entirely concealed when the cover is in position. This feature is not found in any of the references of record." Thus, according to the patentee's own argument before the Patent Office, these amendments which induced the Patent Office to dignify the claims with a patentable status did nothing more than provide for concealment of the cam means for locking the cover to the body of the cooker, thereby attaining, as stated in claims 2 and 6, "an unbroken circumferential line therebetween," which resulted in a device "more pleasing in appearance," and which made it less likely "to collect dust and dirt and also particles of food being cooked."

It may be we have overemphasized the proceedings in the Patent Office. There is some confusion in the authorities as to the importance which may properly be attached to an amendment by which the allowance of a patent has been procured. This court in Electroline Co. v. Reliable Electric Co., 7 Cir., 101 F.2d 380, had occasion to comment upon a similar situation. In doing so we stated (page 382):

"However, the combination without the thickened walls was denied a patent by the Commissioner, and in an infringement suit we have no right to rule differently. It would seem that the presumption of invalidity in such case would be conclusive upon us. The addition of the element of thickened walls to the rejected combination secured a favorable ruling of the Commissioner, and the patent was issued. In a limited sense the addition of that element caused the patent to issue, but it was not granted upon that element alone. The patent was predicated upon the entire amended combination, and we think the District Court so considered it. His ruling in effect was that the element of thickened walls added nothing of value to the rejected combination, and if this be true the patent must fail because the Commissioner has rejected the combination without the element of thickened walls."

In any event, the manner in which allowance of these claims was procured seriously impairs the presumption of validity which ordinarily attaches to the grant. Of course, the circumstances are not conclusive against validity but we think they are persuasive. It could be that the Examiner was wrong when he disallowed the claims and right when he allowed them. However, our study of the prior art in connection with the comments of the Examiner thereon leads us to the conclusion that his action in disallowing the claims was proper. And we are very definitely of the view that the patentability of these combination claims was not aided by the amendments responsible for their allowance. The patentee perfected a stream-lined apparatus which, as already shown, possessed numerous advantages over that which was old. We think, however, that such advantages must be attributed to the skill of the art and not to invention. We hold, therefore, that claims 1, 2 and 6 are invalid for lack of invention.

Plaintiff urges the commercial success achieved in the sale of its product in support of its claim of invention. This appears to have been an important factor in the lower court's conclusion of validity. We have examined the record relative to commercial success and find it not as impressive as claimed. However, in view of our conclusion that the claims are invalid, we find no occasion to relate or discuss it. Riddell v. Athletic Shoe Co., 7 Cir., 75 F.

2d 93; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U. S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973.

The judgment of the District Court is reversed and remanded, with directions to enter a judgment in conformity with the views herein expressed.