## DETROIT GASKET & MFG. CO. v. FITZGERALD MFG. CO.

### No. 276.

Circuit Court of Appeals, Second Circuit.

April 5, 1937.

Gifford, Scull & Burgess, of New York City (George F. Scull, of New York City, and John J. Darby and Max C. Louis, both of Washington, D. C., of counsel), for plaintiff-appellant.

Watrous, Hewitt, Gumbart & Corbin, of New Haven, Conn. (Joshua R. H. Potts, Basel H. Brune, and Eugene Vincent Clarke, all of Philadelphia, Pa., of counsel), for defendant-appellant.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This suit is on three patents that were issued on the applications of George T. Balfe and are now owned by the plaintiff; all containing claims which the defendant is alleged to have infringed. Two of them, Nos. 1,927,450 granted September 19, 1933, on application filed October 26, 1929, and 1,776,140 granted September 16, 1930, on application filed January 13, 1930, are for improvements in gaskets, and the other, No. 1,927,791 granted September 19, 1933, on an application filed December 11, 1931, is for improvements in the perforating of sheet metal. Claims 1 and 3 of the first named patent; claims 1 and 6 of the second; and claim 4 of the third are relied on. They were held valid and infringed except claims 1 and 6 of No. 1,776,140 which were held invalid.

More particularly, the gasket patents relate primarily to the kind of gaskets required for use between the cylinder heads and the blocks of modern internal combustion engines such as are to be found in automobiles and the other patent to a method for making the steel insert used in the gaskets of the first two.

Such gaskets are needed to seal the edges of each cylinder between the head and the block against the escape of gas which is under enormous pressure and they must also withstand at such edges a very high degree of heat. They serve, in addition, to seal the edges of the holes through which the water in the cooling system passes to and from block and cylinder head as it circulates throughout the system to withdraw the necessary heat from the engine to keep it cool enough to run well. Before the patents were applied for, suitable cylinder head gaskets for such motors had long been in use. They were most commonly made of a sheet of asbestos or other packing material sheathed in copper; though lead, zinc, and steel sheathed ones had been more or less used. They were fitted with bindings, called grommets, around the holes necessarily made in them and these grommets were made of whatever material was used for sheathing the packing material; their purpose being to prevent what is called burning at the edges of the cylinders and blowing. Such gaskets were satisfactory and efficient to a high degree. Nevertheless the urge to produce what is in great demand in a form better, or as good at less cost, may well have prompted Balfe to construct the gasket of his patents. He stated the problem he had in mind and what in general he sought to accomplish in his specifications in No. 1,927,450 as follows:

"There is a tendency in gaskets generally for a break once started to spread due to the pressure acting upon the broken portion of the gasket and extending the break to other parts of the gasket. This tendency toward quick spreading of a break and 'blowing' of a gasket became particularly marked upon the advent of high compression and high speed motors. Heretofore, attempts have been made to overcome this weakness in the conventional type of gasket by resorting to various types of reinforcing and binding means along the gasket edge and particularly the edge which is exposed to the high pressure in the combustion chamber. Since the construction of the body of the gasket remains the same, this does not overcome the quick 'blowing' of the gasket when the reinforced edge breaks down. The construction of my improved gasket is such that this tendency is resisted and the break is localized where it occurs. This produces a gasket of greatly increased life and service. It is particularly advantageous in connection with gaskets adapted to serve as packing for a number of joints at which pressure is maintained and which are located close

together so that a break starting at one point in the gasket might readily spread through the gasket and open up another point on another joint. An example is the gasket provided for a multiple compression chamber combustion engine."

After stating that one of his objects was to provide many successive metal barriers throughout the width of his gasket to combat the heat and pressure which cause blowing instead of relying for this purpose on "a single reinforced or non-reinforced barrier around the edge of the gasket" he said: "In my invention, there is provided a sheet metal layer having struck therefrom closely compacted and readily deformable tangs which extend to the surfaces of the cushion layers, so as to provide throughout the width or thickness of the gasket readily deformable and yieldable metal tangs which, by reason of their closely compacted character, form successive barriers. * * * Such a construction may at times be extremely useful because of the high heat conductivity afforded by the tangs exposed at the surfaces of the cushion layers." And further: "My invention relates to an improved gasket wherein there is provided a metal insert which preferably is disposed between layers of suitable packing material such as a composition asbestos, asphalt, or other fibrous material. The metal insert is overlaid preferably on both sides and at least on one side by a layer or layers of packing material."

In this way Balfe undertook to improve what he called the conventional gasket. Yet such advance as he made beyond what was old centers in respect to No. 1,927,450 in his use of readily deformable tangs on the metal insert long enough to extend entirely through the packing material and in No. 1,776,140 in respect to the shape of those tangs other than their length.

A glance at an old German patent granted Carl Salewsky on July 21, 1896, under No. 92,323, and at No. 1,035,190 granted Chester L. Hill in this country on August 13, 1912, will serve to show how much, or how little, Balfe added the new to the old.

Salewsky disclosed a packing means, without mentioning its use for cylinder head gaskets to be sure, made of packing material attached to a metal insert, either corrugated or flat, from which closely positioned tangs had been struck from one or both sides to aid in holding the packing material to the metal. If these tangs were made when the metal was perforated with the closely positioned holes shown punched out in practically square form he said there would be "the further advantage that the mass will also push through the holes and thus the intimate connection of the parts * * * into a whole is assisted." That is to say, the metal would bulge and then break to form the tangs above the bulging if the mass were pushed through in making the holes and that was what would be of assistance in intimately connecting the parts of the packing. What Salewsky did not do and Balfe did, however, was to make the tangs long enough to extend through the width of the packing to clinch at the surface. In Hill's patent the construction of a gasket was shown with one of the suggested uses that of cylinder head sealing for gas engines. It was made with a metal insert having either holes cleanly cut in it, or punched out to form tabs which stuck up, or both. They helped to hold packing material pressed on one or both sides of the insert after it had been sized with adhesive. But here too the tabs were shown too short to go way through the packing. These patents, however, show that if Balfe disclosed any invention in patent No. 1,927,450 and covered that in his claims in suit it resides in his extension of the old tangs of Salewsky or Hill through the packing material and the clinching of them at the surface. Claim 1 is broadly for a packing means of the character described while claim 3 is limited to a gasket for internal combustion engines. They read:

"1. A packing means adapted to provide a continuous surface to surface metallic conduit comprising layers of flexible, elastic material and interposed between said layers a metallic layer having struck-up portions extending through said flexible, elastic layers, whereby to partially overcome the insulating effect of said elastic layers in transferring heat between surfaces contacting said gasket, the outer ends of said struck-up portions being bent at substantially right angles so that they lie in the plane of the outer surfaces of said flexible, elastic layers."

"3. A gasket for internal combustion engines having a passage opening therethrough, comprising sheetlike layers of cushion gasket material and an insert layer therebetween of sheet metal co-extensive with said cushion layers, said sheet metal layer having throughout its area relatively

small, closely compacted tongue-like projections struck therefrom and extending outwardly from each side into each cushion layer to the surfaces thereof, said projections having their ends bent and clinched over the cushion material at the surfaces thereof without projecting thereabove whereby to provide cushion surfaces devoid of metallic projections and to afford a multiplicity of successive metallic barriers throughout the gasket thickness."

These claims with their whereby clauses which add nothing but an assertion of results that follow the use of the construction described and claimed, and so do not extend the coverage of the claims, Gynex Corp. v. Dilex Institute of Feminine Hygiene, 85 F.(2d) 103 (C.C.A.2); Electro-Dynamic Co. v. Westinghouse E. & M. Mfg. Co. (C.C.) 191 F. 506, 508; Id., 202 F. 224 (C.C.A.2), are clearly anticipated by the prior art already discussed unless it can fairly be said that it required the peculiar genius of an inventor to make the tangs long enough to clinch at the outer surfaces of the cushion and to clinch them there. If one wished to hold the cushion material more firmly to the metal insert with the tangs, extending them through the material to be held and clinching them at the surface would be but the commonplace act of a skilled mechanic and for that no emphasis even need be placed upon skill. If one wished to add to the heat conductivity of the packing or gasket from one side to the other, metal conduits from side to side made of the longer tangs would be so obvious a way to do it that a mechanic, knowing what Salewsky and Hill had done, who did not make the change Balfe did would lack the right to be called skilled. By no means do all packing or gaskets need either of these features. In some instances heat conductivity might be just the opposite of what was desired. But in cylinder head gaskets for internal combustion engines both firmness of attachment of the cushioning material to the metal insert to prevent or localize blowing and heat conductivity are desirable so Balfe simply made Salewsky's tangs long enough to, and did, clinch them at the surface to provide both.

It has been suggested that inventive genius was needed to do that when apparently the added length of the tangs would lessen the cushioning action of the packing or gasket. What a slender reed this is to support invention will be seen when it is recalled that metal sheathed cushioning material had long been successfully employed for such purposes and that even steel was useable as sheathing. Besides, the metal insert Balfe used was very thin and the tangs struck from it but small projections of this thin material. The plaintiff's gaskets made in accordance with the Balfe patent have when new an average thickness overall of .062 of an inch and a metal thickness of only .01 of an inch. The pressure to which they are subjected when they are put into an engine and the cylinder head is bolted to the block is about two tons per square inch. No more is needed to show that decreased compressibility caused by the extension of these little tangs to the surface of the cushioning material was too negligible a factor for serious consideration in a cylinder head gasket.

That leaves claim 3 without invention to support its validity and claim 1, though not confined to the cylinder head gasket of an internal combustion engine, can fare no better. Compressibility of a packing in so far as needed is but that required to seal the joint and it is at most a relative term. Adjustment to pressure is the essential. In places where the packing of claim 1 would be too hard to work satisfactorily a softer packing would have to be used, of course, but that does not mean that because the packing of claim 1 is satisfactory in places where the pressure is sufficient to make it an effective seal that it took inventive thought to discover that. And so both claims must be held invalid.

In this connection it is interesting to note that the evidence is uncontradicted that in some comparatively heavy duty internal combustion engines the Balfe gasket would not withstand blowing well enough to make its use without grommets satisfactory and they were used on it. It is, however, certainly a good gasket which has been successful commercially especially because of its use in the cheaper makes of automobiles that are produced in large quantities. As Balfe said in his specifications "blowing" of gaskets "became particularly marked upon the advent of high compression and high speed motors." The record shows that about the same solution of the problem thus created occurred to three others at about the same time that it did to Balfe and his patent application became involved in a four-party interference in the Patent Office from which he emerged victorious. So many supplying

182

about the same solution not long after the need arose can only serve to cast doubt upon the idea that any problem for invention really existed even upon the assumption that the old metalclad gaskets were not satisfactory. Too many reached practically the same result too quickly. See Ruben Condenser Co. v. Copeland Refrigeration Corp., 85 F.(2d) 537 (C.C.A. 2) and Ruben Condenser Co. v. Aerovox Corp., 77 F.(2d) 266 (C.C.A. 2).

Claims 1 and 6 of patent No. 1,776,140 cover the shape of the tangs struck out of the metal insert which forms a part of the gasket of the type described in the patent just discussed. Balfe said in his specifications: "The present application represents a modification of the construction disclosed in my copending application Serial No. 402,589 filed October 26, 1929, and no claim is made in the present case to the broad structure covered in said earlier filed copending case." After saying that an object was to increase the efficiency and length of utility of the gasket of his former application, he added: "More specifically the object of my invention is to so construct and shape a reinforcing element which is embedded in any suitable gasket material that it will form a more binding union between the two and will form a barrier tending to resist breakage or blowouts through the gasket material."

Claim 1 in suit reads: "1. A gasket insert comprising a plate member having on each side thereof a multiplicity of protuberances, portions of said protuberances of substantially less area than the protuberances being cut away and angularly deflected from the protuberance walls beyond the apex thereof to form tangs, said protuberances forming on the other side of said plate member cavities the walls of which are defined by the uncut portions of said protuberance walls."

Claim 6 covers a gasket made with the insert of claim 1, "said tangs and protuberances being embedded in said gasket material layers and said gasket material layers being retained in said cavities when the layers are united, said tangs being of a length to extend through said layers of gasket material and having their ends deformed by the pressure required to unite the layers, to thereby reinforce the layers of gasket material substantially throughout its thickness, said deformed tangs clinching the gasket material."

These claims were both held invalid and rightly so. Less verbosely stated than in the claims, what is covered is the pushing out of depressions in the metal which on the opposite side appear as little mounds called "protuberances" out of which a portion is torn to form the smaller tangs that stick out from the mounds at an angle. Now this is clearly nothing but a maker's choice in the shape of the tangs Salewsky disclosed. Let the punching means be shaped to make Salewsky's tang and that will be the result and let it be shaped for Balfe's and you will get that. The result but follows the type of punch used just as does the result of die cutting follow the shape of the die where clean cuts are made. Claim 1 covers no patentable advance beyond Salewsky, and since we have found the claims of No. 1,927,450 invalid it follows that, as claim 1 of this patent is invalid, claim 6 is also.

Claim 4 of No. 1,927,791 in suit is for the method of making the metal insert of the gasket to which the other patents relate. It is a rather long and rather peculiarly worded claim ostensibly describing the method in terms of what happens to a strip of sheet metal gasket reinforcing material when it is run between the co-acting toothed wheels of a perforating machine. It reads: "The method of making gasket reinforcing material consisting of a strip of sheet metal having a multiplicity of closely spaced projections formed therefrom extending throughout the area of the strip adapted to be embedded in co-extensive layers of gasket material, and each having a relatively elongated and narrow deformable wall portion and a remaining wall portion of less length, which comprises presenting sheet metal material to simultaneous engagement with rotating toothed members upon opposite sides of the sheet, depressing and piercing the metal at each point of engagement of a tooth with one side of the sheet and former openings and walls defining said openings extending laterally from the opposite side of the sheet and continuing the piercing operation and cutting a narrow portion of the metal in advance of each tooth at one side of each opening substantially in the plane of rotation of the teeth and pressing the severed metal laterally from the said opposite side of the sheet and forming an elongated wall at said side of the opening constituting a deformable tang, extending beyond the remainder of the wall of the opening."

183

It has been shown that the so-called method of the above claim is but the result of operating a machine for which patent No. 1,843,438 was granted to Balfe on February 2, 1932. Regardless of any other possible defects, this claim is invalid because a user of the patented machine lawfully so doing under No. 1,843,438 would inevitably practice the so-called method of claim 4. It may be quite true that the operations necessary to make such a metal insert may be performed by hand or by some other machine and that a method that can be thus practiced is ordinarily patentable. Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034. But this is not so where the method cannot be described, as here, without describing the characteristic function of the patented machine. See Vapor Car Heating Co. v. Gold Car Heating & Lighting Co., 7 F.(2d) 284 (C.C.A.2); Black-Clawson v. Centrifugal Engineering & Patents Corp. (C.C.A.) 83 F.(2d) 116.

Decree modified to hold all claims in suit invalid.