## DETROIT GASKET & MFG. CO. v. VICTOR MFG. & GASKET CO.

### No. 7217.

Circuit Court of Appeals, Seventh Circuit.

July 12, 1940.

Rehearing Denied Oct. 18, 1940.

Frank Parker Davis, Albert J. Fihe, and George I. Haight, all of Chicago, Ill., for appellant.

Edward C. Grelle, of Chicago, Ill., John J. Darby, of Washington, D. C., George F. Scull, of New York City, and Max C. Louis, of Washington, D. C., for appellee.

Before TREANOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This is an appeal from an interlocutory decree entered upon a finding that defendant-appellant had infringed a valid patent which had been assigned to the plaintiff-appellee. The decree ordered an accounting of profits and damages and enjoined further infringement. Defendant assigns as error here the findings of validity and infringement.

The patent in suit, No. 1,927,450, was issued to plaintiff's assignor, Balfe, and relates to improvements in the structure of a gasket for internal combustion engines. The gaskets involved in this suit are used as cylinder head gaskets. They are inserted between the cylinder block and cylinder head of automobile engines, and the cylinder head and block are fastened together by appropriate fastening devices, such as bolts. The gaskets, which are thin strips of material, separate the metal surfaces of the cylinder head and block and because of the compressibility and the resiliency of the gasket material the gaskets serve to seal the joined surfaces against leakage which, without the presence of the gaskets, would occur as the result of the lack of absolute smoothness of the contact surface of the cylinder head and block. The gaskets conform to the surfaces and openings of the cylinder head and block having appropriate water and bolt holes and larger openings for the combustion chambers of the automobile engine. The edge of the gasket is, in effect, a part of the internal wall of the combustion chamber, and the explosions in the combustion chamber create pressure which tends to force the gasket out of its normal shape and position; this is known as the "blowing of gaskets." The edges of the gasket opening around the combustion chamber and the portion of the gasket in the relatively narrow space between the

different combustion chambers are particularly exposed to the force of the pressure which tends to "blow them." In the higher compression motors of recent models, in which a mixture of gasoline and air is subjected to increased compression before the mixture is ignited, there is an increase in the pressure and heat resulting from the explosion.

The essential functional characteristic of internal combustion engine gaskets, to which the patent relates, are as follows: (1) compressibility, (2) elasticity or rebound under constantly varying clamping pressure, (3) resistance to burning in the presence of heat over 3000° F., and (4) resistance to "blowing" under pressures in excess of 900 pounds.

Prior to the introduction of plaintiff's patent to the automotive trade in 1930 a gasket known as the metal clad gasket was used in automobile engines. This type of gasket consists of a sheet of asbestos or other suitable packing material inclosed within two thin sheets of metal, usually copper. Defendant manufactures such gaskets.

Plaintiff's patented article is known in the trade as a metal insert gasket and is sold under the trade name "Steelbestos." It consists of a center layer of steel sandwiched between layers of packing material consisting of asbestos cushions. From the surfaces of the metal plate numerous thin projections extend into and through each of the layers of asbestos, and at the outer surface of each of the layers the ends of the projections are bent and clinched over the surface. The projections are described as tongue-like and referred to as tangs. Plaintiff's device has met with commercial success in the field of lower priced cars, but is not used in the higher priced cars. The latter use the copper clad gaskets exclusively, and sales of copper clad gaskets preponderate for replacements, even for use in cars whose standard equipment includes plaintiff's gaskets.

Plaintiff claims for his device that by extending outwardly from the metal insert the tongue-like projections, or tangs, and by causing the ends of these tangs to be bent over the cushion material at the surface thereof without projecting thereabove, there are provided cushion surfaces devoid of metallic projections; and, further claims that the tongue-like projections, or tangs, afford a multiplicity of successive metallic barriers throughout the asbestos cushions, which furnish strong resistance against "blowing." And plaintiff also claims that there is a special benefit from having the clinched ends of the tangs at the surfaces of the cushion material, since such metallic ends contact the metallic surfaces of the cylinder head and block of the automobile engine and "partially overcome the insulating effect of said elastic layers in transferring heat between surfaces contacting said gaskets."

If the foregoing claims of functional merit are material to the question of invention their materiality is qualified considerably by the fact that the article manufactured by plaintiff for the automobile trade, and which has met with commercial success, has an important departure from the patent claims and specifications. This departure was made shortly after the introduction of plaintiff's gasket to the trade and consists in the use of "grommets", the grommet being a metal edge binder which faces and reinforces the edges of the gasket openings. In copper clad gaskets a grommet may be made by folding over one of the copper sheets; but in the metal insert gaskets it is a separate edge binding which encases the edges of the gasket openings. The extent of the departure from the patent in suit, by the use of grommets, is disclosed by the specifications. We learn from the specifications that theretofore conventional types of gaskets had resorted to "various types of reinforcing and binding means along the gasket edge and particularly the edge which is exposed to the high pressure in the combustion chamber." There is the further recital that "instead of a single reinforced or non-reinforced barrier around the edge of the gasket, I provide throughout the entire width of the gasket and over substantially its entire area a larger number of these barriers which, by extending throughout the thickness or width of the gasket, offer successively available walls to resist blowing, * * *." The patent drawings and claims not merely omit grommets, but the language shows that the patentee was claiming a barrier arrangement which was intended to replace the grommet barrier.

The use of grommets by plaintiff cannot be considered merely as an improvement on the patent as plaintiff contends; it must be considered as a departure since the patent states that instead of grommets tangs will be used. The use of the metal grommets relatively decreases the value of the

tangs for heat transference, and increases heat and pressure resistance of the gasket.

The claims of the patent herein involved are Nos. 1, 2, and 3.[1]

In a prior suit involving this same patent[2] only claims 1 and 3 were considered. In that suit the Circuit Court of Appeals for the Second Circuit held that the claims were invalid for want of invention. The addition of claim 2 in the present suit neither strengthens nor weakens plaintiff's cause since claim 2 adds nothing of substance to claims 1 and 3 and the decision by the Circuit Court of Appeals for the Second Circuit is as applicable to claim 2 as it is to claims 1 and 3.

We shall first consider the claim of defendant that the patent in suit discloses no inventive genius in view of the prior art.

Hill, No. 1,035,190, granted in 1912, and a German patent 90,323, granted to Salewsky in 1896, disclosed metal insert gaskets with projecting tangs. The tangs of these patents do not extend to the surface of the packing material. As far back as 1912 Hill foresaw and specifically stated that a gasket of his type could be used in the head of a gasoline engine. Hill used asbestos as a packing or cushion material. Salewsky in 1896 stated that the "subject of the invention is a packing material, in which the mass is provided with sufficient resistance by means of an interposed metal layer having jagged projections, points or the like."

It is clear from the foregoing that Hill and Salewsky disclose all of the essential elements involved in the transition from the concept of a metal clad gasket to that of a metal insert gasket and, also, disclose all the essential elements of a metal insert gasket such as that of plaintiff. Our question becomes the narrow one of whether it was invention to lengthen the tangs to the surface of the packing material and by bending and clinching the ends of the tangs at the surfaces of the cushion material to increase resistance to lateral pressure and heat, and to partially overcome the insulating effect of the elastic layers by reason of the contacts of the clinched ends with the metal surfaces between which the gasket is placed.

Perhaps it should be noted that the packing material of the metal clad gaskets creates no problem of heat insulation, since the metal completely encases the insulating material, and the surfaces of the metal case are pressed between the metal surfaces of the cylinder head and block; and the upper and lower surfaces of the metal clad gaskets are, in terms of the patent, "in heat transferring relationship." In the case of the metal insert gasket the cushion material tends to insulate rather than to transfer heat and the metal core with its tangs obviously is less efficient in transferring heat than the continuous metal case of the metal clad gasket, and this insulating tendency is further enhanced if the tangs do not extend

---

[1] Claims 1, 2, and 3 are as follows:

"1. A packing means adapted to provide a continuous surface to surface metallic conduit comprising layers of flexible, elastic material and interposed between said layers a metallic layer having struck-up portions extending through said flexible, elastic layers, whereby to partially overcome the insulating effect of said elastic layers in transferring heat between surfaces contacting said gasket, the outer ends of said struck-up portions being bent at substantially right angles so that they lie in the plane of the outer surfaces of said flexible, elastic layers.

"2. A gasket for internal combustion engines having a passage opening therethrough, comprising sheet-like layers of cushion gasket material and an insert layer therebetween of sheet metal coextensive with said cushion layers, said sheet metal layer having over its entire area relatively small, closely compacted tongue-like projections struck therefrom and extending outwardly from each side into each cushion layer to the layer surface, said projections being embedded in the cushion layers and having their ends bent and clinched over the cushion material at the surfaces thereof, and providing smooth cushion surfaces with metallic tongues embedded therein at the surfaces in heat transferring relation.

"3. A gasket for internal combustion engines having a passage opening therethrough, comprising sheet-like layers of cushion gasket material and an insert layer therebetween of sheet metal coextensive with said cushion layers, said sheet metal layer having throughout its area relatively small, closely compacted tongue-like projections struck therefrom and extending outwardly from each side into each cushion layer to the surfaces thereof, said projections having their ends bent and clinched over the cushion material at the surfaces thereof without projecting thereabove whereby to provide cushion surfaces devoid of metallic projections and to afford a multiplicity of successive metallic barriers throughout the gasket thickness."

[2] Detroit Gasket & Mfg. Co. v. Fitzgerald Mfg. Co., 89 F.2d 178.

to the surface of the cushion material and make contact with the metal surfaces between which the gaskets are placed.

In Electroline Co. v. Reliable Electric Co.[3] this Court approved the statement that "mere support or thickening does not spell invention"; and in the course of the opinion in the foregoing case this Court also quoted with approval the observation of the examiner that " * * * it is well known in the art that if a part is not strong enough for its proposed duty such parts may be strengthened by addition of material. So that adding material on the ends of Fleeger's sleeve would be obvious."

The bending of the ends of the tangs fastened the two cushions, or pads, of asbestos material more securely to the metal insert; and this resulted in strengthening the resistance of the tangs against the lateral pressure of the combustion chamber of the engine. Because the lateral pressure against the edges of the gasket is greater in a modern automobile engine, plaintiff's assignor increased the number of tangs, lengthened them, and bent their ends over and upon the surface of the asbestos material just as a nail end is bent over and pounded flat against the surface of a board through which the nail has been driven. The joining and holding together of one piece of material to another by nail-like metal pieces and the knowledge that the resisting power of the combination is greatly strengthened if the nail-like pieces are increased in number and if the ends of the nail-like pieces pierce entirely through the joined material and are then clinched, suggest neither originality nor novelty.

British patent No. 13,228, issued to Roberts in 1902, and which related to the manufacturing of veneer boarding for boxes, disclosed a metal insert with projections or tangs, with bent ends at the surface of the joined layers of veneer.

It is clear, when the metal insert gasket is in use, that bending of the ends of the tangs will occur if they extend to the surface or beyond, and to a certain extent if they extend to a point near the surface. Plaintiff's expert testified that a pressure upon a gasket in use would reduce its thickness about 30%. This pressure necessarily would bend or distort any tang end appearing at the surface and the ends so bent would lie along or in the plane of the outer surface of the cushion layers. Also, if the ends of tangs extended into the

elastic cushions a distance of 75% of its thickness, it is obvious that when the layers are reduced 30% of their thickness that an appreciable number of those tangs would be forced through the layers and bent along, or in, the plane of the surfaces of the cushions; and if none should be forced through all would be forced much nearer the surface.

It would seem inevitable that a mechanic of ordinary knowledge and skill with the teachings of Salewsky and Hill available, who was confronted with the problem of increasing the resistance to lateral pressure, would realize that lengthening the tangs and bending the ends over and along the surfaces of the cushion layers would add to the power of resistance, and such a mechanic could not avoid the conclusion that if the number of tangs were increased that there would be a resulting increase in the number of barriers. And a mechanic of ordinary skill and knowledge could not be ignorant of the fact that the asbestos cushions would have a greater heat insulating capacity than the metal case of the older metal clad gaskets; and it would be elementary that bringing the metal tangs into contact with, or near to, the surfaces of the joined cylinder head and block would result, as stated in plaintiff's claim One, in a partial overcoming of the insulating effect of the elastic layers in transferring heat between surfaces contacting the gasket.

It is significant to note that in respect to the question of "heat transference" claim One designates as the functional result of the gasket construction that it will "partially overcome the insulating effect of said elastic layers in transferring heat between surfaces contacting said gaskets." Plaintiff's expert witness testified that the benefit of "heat dissipation" would be obtained "if the tangs all remain below the surface of the asbestos"; but that the maximum benefit would be obtained "if the tangs came entirely to the surface." But he also testified that "as long as there is any tang whatever, occupying part of the space which otherwise would be occupied by the asbestos, there really is an improvement in the conductivity of resulting structure."

It does not require expert knowledge to recognize the correctness of the foregoing statements; and it follows that the tangs of the Salewsky and Hill gaskets would "partially overcome the insulating effect of said

---

[3] 7 Cir., 101 F.2d 380, 382.

elastic layers in transferring heat between surfaces contacting" a Hill and Salewsky gasket. As between a gasket conforming strictly to the teachings of Salewsky and Hill and a Balfe gasket the partial overcoming of the insulating effect of the elastic layers involves the same principle and is the result of identical elements of gasket structure. We agree with the following statement in the opinion of the Second Circuit of Appeals in Detroit Gasket & Mfg. Co. v. Fitzgerald Mfg. supra [89 F.2d 181]:

"If one wished to add to the heat conductivity of the packing or gasket from one side to the other, metal conduits from side to side made of the longer tangs would be so obvious a way to do it that a mechanic, knowing what Salewsky and Hill had done, who did not make the change Balfe did would lack the right to be called skilled."

The heat and pressure of the present internal combustion engine have made necessary increased structural efficiency of gaskets. But the point at which the greatest resistance to heat is required is the edge of the gasket which, in effect, forms a part of the internal wall of the combustion chamber; and an insert metal gasket with asbestos padding could be constructed strictly in accord with the disclosures of Hill and Salewsky and yet furnish as great resistance to heat as the Balfe device. And Balfe has obtained greater resistance to lateral "blow out" pressure by increasing the number of tangs, thus increasing the number of "barriers", and by lengthening the tangs to the surface of the asbestos layers and by bending the ends over and along the surface and clinching them into the asbestos layers. Increasing the number of tangs to increase resistance is a commonplace and obvious expedient; and bending and clinching the ends of the tangs either without lengthening them or after lengthening them to the surface of the asbestos pads for the purpose of more firmly binding the pads to the metal core and thereby increasing lateral resistance, seems no less obvious and commonplace.

There is no novel contribution to the problem of compressibility and resiliency in the Balfe device. In a gasket of the type of Balfe or Hill and Salewsky compressibility and resiliency are the resultant of adjustments and the proportioning of the different physical elements which make up the gasket. The compressibility and resil-iency factors will vary with the amount of asbestos, or other packing material, used as the cushions, as well as with the amount of metal used in the tangs. The resiliency factor will vary with the density of the gasket and this will depend upon the degree of pressure applied in the first instance in compressing the packing material and the included tangs. Furthermore, the resiliency will vary with the pressure exerted upon the gasket by the cylinder head and block when they have been bolted into position.

■ It is suggested that Balfe chartered his course independently of Hill and Salewsky; that he started with the traditional copper clad gasket and, in the words of the District Court, "turned it inside out." But in our opinion the teachings of Hill and Salewsky, long prior to Balfe, had turned the copper clad gasket inside out both in respect to concept and in respect to the mechanical device to give effect to the concept of the metal insert gasket. The concept of a metal insert gasket of the type produced by both plaintiff and defendant, is disclosed by Hill and Salewsky, and their teachings reveal all the essential elements of plaintiff's and defendant's gaskets. The statement of this Court in Grip Nut Company v. MacLean-Fogg Lock Nut Co.[4] is applicable to the facts of this case: "The mere carrying forward of the original thought, with a change only in form, proportion, or degree, and doing the same thing in the same way, by substantially the same means, but with better results, is not such invention as will sustain a patent."

■ If it be conceded that Balfe discovered an entirely new problem which had not been known to the automobile industry before, and if it be conceded further that his device substantially solved the problem, it does not follow that his discovery of the problem and his creation of the device constitute invention. The discovery of the problem does not constitute invention, and if the device of Balfe in all its essential elements is covered by the disclosures of Hill and Salewsky with only such mechanical changes or improvements as would occur to one skilled in the art, when confronted with the particular problem, the creation of the device does not constitute invention.

■ We are of the opinion that the claims of the Balfe patent in suit are anticipated by the prior art; and the absence of

---

[4] 7 Cir., 41 F.2d 721, 724.

invention is so clear that commercial success has no significance as evidence of invention.

The decree of the District Court is reversed with directions to dismiss the complaint for want of equity.