ANDERSON CO. et al. v. LION PRODUCTS CO., Inc., et al.

No. 458.

District Court, D. Massachusetts.
Jan. 9, 1941.

Fish, Hildreth, Cary & Jenney and Melvin R. Jenney, all of Boston, Mass., and Kenyon & Kenyon and George T. Bean, all of New York City, for plaintiffs.

Arthur D. Thomson and Thomson & Thomson, all of Boston, Mass., for defendants.

FORD, District Judge.

This is a suit for the infringement of three United States patents: Nilson and Prince (hereinafter called Nilson) No. 1,597,999 issued August 31, 1926, on application filed August 19, 1922; Anderson, No. 1,853,715, issued April 12, 1932, on application filed August 31, 1929; and Anderson, No. 1,950,588, issued March 13, 1934, on application filed February 2, 1929.

The plaintiffs are Indiana corporations and the admitted owners of the patents; the corporate defendant is a Massachusetts corporation and the individual defendant its president. The defenses to the suit are invalidity and noninfringement.

### Findings of Fact.

The Nilson patent No. 1,597,999 is a patent for a windshield cleaner part and, according to it, it has for its objects a saving of time incidental to the renewal of wiper strips made necessary by weakenings and breakage of the flexible or rubber portion over the edges of a rigid back or rib of a metal channel holding the strip and protection of the rubber portion from deterioration caused by wind and rain. As the patentees stated, themselves, in the specification: "The present improvement relates specifically to the construction of said U-shaped back or rubber holder and its edges * * * which have heretofore cut and acutely bent the flexible portion along the bending line."

It appeared from the evidence that U-shaped backs or rubber holders and rubber wipers projecting beyond the edges of the holders were old in the construction of windshield wipers for automobiles and they were old in analogous arts at the time of the patentees' claimed invention. It also appeared that one of the disadvantages of the wipers in use as windshield cleaners was that the sharp edges of the U-shaped holders cut the flexible or rubber portion and caused them to deteriorate along one line. When the structure of the rubber deteriorated, the rubber had a tendency not to flex back and turn the blade over for the return stroke and necessarily the deterioration caused the blade to have a shorter life.

The patentees accomplished their purposes by curving or flaring the edges of the channelled metal holder outwardly away

from each other so that the edges recede from immediate contact with the rubber and, as the patentees describe, cause the rubber to come into gradual contact with the metal, thereby avoiding acute bending, with the edges at the same time forming in themselves a rain and windshield for that part of the rubber enduring the greatest bending strain. The only claim of the patent is directed to and narrowly confines itself to what the patentees specifically attempted to accomplish, and it reads as follows: "In a windshield cleaner squeegee, the combination with a flexible wiper strip, of a rigid channeled back between the sides of which said strip is held and beyond which it projects, the edges of said sides adjacent to the bending line of said strip being arranged spaced apart and normally out of contact with said strip."

The Anderson patent, No. 1,950,588, discloses a channel-shaped wiper holder with its side portions or edges bent or curved outwardly as in the Nilson patent. The flexible wiper element consists of a head provided with a shank or body member, the whole being in the shape of a letter T and mounted in the holder. The head is wedge-shaped or of triangular cross-sectional shape and is provided with arrises or alternate ridges and grooves to furnish multiple wiping edges. The body of the wiping member is of less width than the head in order to provide more flexibility.

Claims 1, 2, 3, 4, and 5 of this patent are in suit. Claims 1 and 2 disclose the edges of a channel-shaped holder outwardly flared as in the Nilson patent and, in addition, claim 1 discloses that the wiper element consists of a hinged head portion with a flexible body, a portion of the latter being the flexible hinged portion that connects the head with the holder.

Claim 2 also discloses the feature that the wiper element is so placed in the holder that the shoulders on the underside of the head lie adjacent the free edge of the adjacent channel side when the wiper element is flexed toward and into engagement with that side.

Claims 3, 4, and 5 of this patent are practically the same and cover solely a wiper blade with a head and body as described in claims 1 and 2.

The Anderson patent, No. 1,853,715, discloses what the inventor describes as an improvement in the type of wiper blade described in the application for the foregoing Anderson patent No. 1,950,588. The application for this patent was filed August 31, 1929, and for patent No. 1,950,588 on February 2, 1929. This patent, however, was issued about two years before No. 1,950,588.

This patent described a thick head portion with longitudinal arrises similar to that of No. 1,950,588 and a body part connected by a hinge portion of reduced size to the head portion. The body part here closely fits into the flared channel holder. Claim 4 of this patent, which is the only claim in suit, described these features, and is as follows: "A wiper for windshield cleaner blades, formed of a flexible rubbery substance and comprising a body portion, a head portion, and a neck portion connecting the head portion to the body portion, the neck portion being spaced inwardly of the two sides of both the head and body portions and being relatively thin in proportion to the width of both the head and the body portions and constituting a freely flexible thin web permitting the head to laterally tilt in opposite directions through substantial arcs, under the light pressures normally exerted by windshield wiper arms, the head having on each side of its central longitudinal plane a plurality of longitudinal arrises.

This patent differs very little from Anderson No. 1,950,588, in its structural elements. It reflects merely a change in the relative dimensions of the structural elements of the blade described in Anderson No. 1,950,588.

The plaintiff Anderson Company began making and selling its windshield wiper blades embodying the features of the three patents in suit in April, 1929. Up to the end of 1938 it sold about 12,000,000 of its wiper blades throughout the United States and in some foreign countries and in the last three years its sales averaged 2,500,000 a year. They are standard equipment at the present time on several well known makes of automobiles. There was no doubt of the commercial success of the Anderson Company's commercial product.

The defendant, Max Zaiger, was formerly president of the Signal Manufacturing Company, organized in Massachusetts, in 1920. This company was organized by himself and his brother, Louis Zaiger, who is still with it as its treasurer. It was organized for the purpose of manufacturing and selling automobile accessories. Up to 1925, it was engaged in selling hand wipers including blades and, from that time on, has sold various kinds of wiper blades for

automatic windshield wipers. The company manufactured and sold many other automobile accessories and was located in Lynn, Massachusetts. In 1933, the defendant Max Zaiger severed his connection with the Signal Manufacturing Company and organized the defendant Lion Products Company, Inc. The Lion Company since its organization has manufactured and sold automobile accessories including windshield wiper blades and during the last six years has manufactured and made sales of them on a large scale. During the latter period, it manufactured and sold a blade strikingly similar to the commercial product of the plaintiffs and which is the accused infringing device in the present case.

When the plaintiffs' structure came on the market in 1929 there were two commercial types of windshield wipers, hand and automatic wipers. The blades used in the hand wipers were heavier than those made for automatic windshield wipers. It was necessary in automatic wipers that the blades be composed of thin flexible rubber so that they might flex under light pressure. The blades used in the art at that time were all fastened in a channel U-shaped metal holder. Most of the wipers contained a single strip of rubber fastened in the metal frame, but there was also in general use a multi-ply blade which afforded multiple wiping edges. Some of these were five-ply blades, each strip being very thin and fastened in the frame and extending below it.

It is not disputed that in 1929 windshield wipers were old and were composed of a metal channel holder with either single or multi-ply rubber flexible wiping strips, with the rubber or rubbers fastened snugly to the sides of the metal holders. And it was not disputed that single wiper rubber strips in windshield wipers with metal channelled holders were old in 1922.

The chief disadvantages of the types of wiper in existence in 1929 have been referred to above. The commercial article of the plaintiffs is a combination of the separate elements described in the three patents in suit. Its blade does not represent a unitary invention.

## Conclusions.
### The Nilson patent.

The defendants to show lack of novelty and invention in this patent rely on Conant, No. 1,062,322, not cited against the Nilson application in the patent office, Green, No. 1,397,511, and Lane, No. 948,630.

Conant describes a hand-operated window cleaner for vestibule windows of motor cars. His device embraces a wiper handle terminally equipped with curvilinear spring plates which are adapted to embrace a rubber wiper which extends beyond the sides of the spring plates which are substantially equivalent to the sides of the metal channel holders. The edges of the spring plates are curvilinear, or curved away from one another, as in the Nilson device, and are out of contact with the rubber strip. What Nilson said he was specifically trying to do, i. e., to keep the rubber away from the sharp edges of the channelled holder, Conant disclosed how this could be done a great many years before in the flared sides of his wiperholder. Nilson made no step in the art over Conant. Nilson's blade was more flexible than Conant's, to be sure, but this feature in no way involved any inventive step over Conant who used a thicker rubber strip in his device, necessarily flexible. Not only as seen in Conant, the art reflects that a flexible rubber single strip was old.

Green, No. 1,397,511 (1921) shows a hand-operated automobile windshield cleaner with a single rubber strip extending below flared edges of a channelled metal holder as in Nilson, the flared edges being produced by chamfering or pinching the metal to secure the rubber in the holder.

Lane, No. 948,630 (1910) shows a window cleaner with a holder and wiper strip of alternate layers of rubber and fabric. One edge of his holder flared and the patentee clearly recognized that wipers became worn by contact with the edges of the holder. In fact, it does not require much imagination for anyone to recognize the latter fact. Simple improvements as this involve no invention. Lane also placed his reinforcing strip of fabric next to the curved edge of the holder to prevent wear.

■ Further, the defendants introduced in evidence, to show lack of novelty, a blade comprising a part of a device known as the Folberth automatic windshield cleaner. This blade, I find as a fact, was manufactured before 1920 and purchased by the defendant Zaiger in that year and it showed flared edges in a channel holder embracing a flexible rubber strip. Other than this blade, I find that the other prior uses sought to be shown by the defendants should not be and are not considered in passing upon the validity of any of the patents in suit in view of the fact that

478

the defendants' oral evidence has not been convincing enough, in the entire absence of documentary proof, to establish their existence at a prior effective date. The defendants have not sustained the burden of proof imposed upon them to prove this latter fact. The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154; United Kingdom Optical Co. Ltd., et al. v. American Optical Co., et al., 1 Cir., 68 F.2d 637, 639.

The feature of flaring the edges of metal holders that is described in this patent to prevent breaking and disintegration of the rubber along the line of flexure, even disregarding the prior patented and prior uses, did not involve invention. It hardly needed even a trained artisan to know that the sharp edges of the metal holder would cut the rubber and a rounded edge would not.

■ The plaintiffs argue that the device shown here possesses patentability because it discloses a combination of elements, and then argue that a combination may be patentable. To be sure, a new combination of old elements may be patentable if it produces a new and useful result, but I cannot find any new result that the Nilson device produced. It is again well to note in connection with this patent that Conant, supra, was not cited against the application in the patent office and it took over four years for its issuance. This would lead to the conclusion, in the absence of any evidence to account for the delay, in view of the simplicity of the device, that even without Conant, the patent office itself was slow in making up its mind as to validity.

Anderson, No. 1,950,588.

■ The flared edges of the holder in this patent in claims 1 and 2 are disclosed in the Nilson patent, No. 1,597,999, which is prior art. Even if we assume that the enlarged head portion with the flexible body in claim 1 and the head portion of triangular cross-section with the flexible body and the added element of shoulders to stop flexing in claim 2 are, which I decide are not, improvements rising to the dignity of invention, yet these claims are invalid because they claim too much. They cover the alleged invention of the curved edges of the holder, already described in the Nilson patent, and these flared edges performed the same function here. Improvement on one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. Consequently, this patent is void for claiming more than the patentee invented. If the improvements which the plaintiffs claim in claims 1 and 2 involve invention, the patentee should have patented them as such. Lincoln Engineering Co. v. Stewart Warner Corp., supra.

Further, in urging the invalidity of this patent, the defendants rely upon a French patent to one Eyquem, No. 589,365 (1925), for a windshield wiping device for automobiles. This patent discloses a construction similar to that described in claims 3, 4, and 5 of this patent. There is disclosed in the Eyquem patent a channel-shaped holder embracing a wiping organ made up of a rubber blade comprising longitudinal ribs and grooves forming arrises as described in claims 3, 4, and 5 of this patent under consideration. The series of edges or arrises formed by the ribs and grooves of the rubber come successively in operation in accordance with the amount of pressure used or degree of friction encountered as the wiper goes over the windshield. This patent plainly reveals that it is the idea of an enlarged flexible head that permits the successive wiping edges to come in contact with the glass. It is the idea of substituting several wiping edges in a single head for multi-ply edges provided by several strips of rubber in the blade. Thus, Anderson was not the first to disclose this type of construction. Eyquem also disclosed that the grooves could be arranged on a simple blade or block of rubber. The contention that the edges in Eyquem were not sharp as in Anderson and, consequently, were not arrises, is without substance. Assuming, and granting, that the Anderson head is better, the same idea is there in Eyquem, and that is enough. If Anderson depended alone upon this feature for patentability, and Eyquem did not precede him, I could not find that substituting several wiping edges in a single head for multi-ply edges, which were old, reflects any uncommon talent. It is display in my opinion of the skill of the calling.

Ames, No. 866,996 (1907), and Otto Anderson et al., No. 1,419,601 (1922), describe wipers composed of rubber tube which, when clamped in the holder, show enlarged heads.

The defendants further relied upon Linscott, No. 229, 430 (1880); Adcock, No. 701,278 (1902); Cumming, No. 674,962 (1901); Frey et al., No. 92,034 (1869); Howell, No. 975,527 (1910); Davidson, No. 1,056,779 (1913), to discuss the details of which would needlessly prolong this opinion. However, in these patents will be found the idea of enlarged heads or wiping edges and the claimed desirability of provisions for arrises for more effective cleaning.

The plaintiffs argue that some of these patents set out above are concerned with non-analogous arts and hence not pertinent. However, some of them concern automobile wipers and many of the features shown in devices in somewhat analogous arts disclose their adaptability for cleaning windshields of automobiles. It is my opinion, that the various elements shown in these patents do anticipate, where, as here, the combination claimed produced no new and useful result. The court stated in Newcomb, David Co., Inc., v. R. C. Mahon Co., 6 Cir., 59 F.2d 899, 901: "It is elementary that invention may reside in a combination of elements all of which were theretofore separately old in the art, but, in order to sustain such a combination, it is equally clear that the inventor must have done more than make a judicious selection from the devices of the prior art, each designed and utilized to accomplish its individual purpose at a time and in a place where such function is necessary for the operation of the whole. This is but the exercise of the mechanical ability reasonably to be expected in the development of the art, and has repeatedly been held insufficient to evidence invention, whether such decision be placed upon the ground of aggregation or upon the lack of an exercise of the inventive faculty."

The patentee's real difficulty with respect to the devices described in all of the claims here in suit is that he fails to disclose that he conceived any novel idea. The ideas were all present in the art and his task was easy to use a combination of these ideas as a basis for the device he sought to patent. I have considerable difficulty in finding patentability unless I can find some evidence of creative faculty, and I do not find it in this patent. There is shown here nothing more than an exhibition of mechanical skill in an art involving a device already old and which produced no new and useful result that I can determine. Even assuming there was novelty in the changed shape of the wiper element, the plaintiffs have failed to show it involved invention. All of the elements present were performing an old function. It was an aggregation of old results. The only possible new function shown here was the feature of the shoulders on the head coming in contact with the flared edges of the holder to stop flexing. This is purely a mechanical feature that hardly involves invention. It was a successful mechanical contrivance involving changes in form and degree, to be sure, but doing the same thing, the same way, by substantially the same means. The contention that the enlarged head portion with the flexible body in this patent performed a new joint function with the flared edges, is without merit: Each of these elements was working out its own effect. The flared edges present in Nilson were performing their same function, i. e., keeping the rubber away from the sharp edges of the holder; the flexible wiper, though in a little different form, was doing the wiping as wipers had done it long before in the art. The joint product of the elements of the combination disclosed no novel result and, consequently, invention is not shown. Hailes, Adm'r v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241, 248. There was nothing present beyond flared edges of the holder and a flexible strip for cleaning, and these were old features in the art.

There was an abundance of testimony by the plaintiffs' expert as to pressure of the blade on the windshield, frictional resistance, the locus of flexure, angle of flexure, disposition of strain, and so on, but all that this testimony amounted to was an opinion as to how the wiper worked as it proceeded across the windshield. It did not aid in revealing any new and useful function performed by the claimed combination. Glowing descriptions of claimed results which were said to attend the use of the commercial product of the plaintiffs and when analyzed revealed no actual new and useful result over the prior art, add no validity to the claims. We are dealing with real, not fanciful results.

Anderson, No. 1,853,715.

Claim 4 of Anderson No. 1,853,715 is the only claim of this patent in suit, and this claim described changes in the structural elements of the devices shown in Anderson, No. 1,950,588. It is substantially the same as the device there.

What significance there was in issuing the patent in No. 1,853,715, two years before No. 1,950,588 was issued, where the application in the latter was filed before that in No. 1,853,715, does not appear. It may be that the patent office regarded the inclusion of the "neck" element in No. 1,853,715 made the latter patentable over the prior art. It took the patent office almost five years to issue the patent in No. 1,950,588 and there was no evidence as to what difficulties were involved. The device involved was simple.

■ The body portion of the wiper in No. 1,853,715 is thicker, and the neck portion connecting the head and body is described as thinner than the head and body, and this neck portion, the patent reveals, constitutes a "freely flexible thin web permitting the head to laterally tilt in opposite directions through substantial arcs". These differences in the structure described in claim 4 of this patent are matters of degree with respect to the structure in Anderson No. 1,950,588, just discussed. Surely, thickening the body portion does not spell invention. Electroline Co. v. Reliable Electric Co., 7 Cir., 101 F.2d 380.

■ Changes in degree involving no different steps, purposes, and objects, as was the case here, do not make it patentable. Dykema v. Liggett Drug Co., 2 Cir., 94 F.2d 648; Detroit Gasket & Mfg. Co. v. Fitzgerald Mfg. Co., 2 Cir., 89 F.2d 178. As the court said in Peerless Equipment Co. v. W. H. Miner, Inc., 7 Cir., 93 F.2d 98, 103: "The mere carrying forward of the original thought with a change only in form, proportion or degree, in doing the same thing the same way by substantially the same means, but with better results, is not such invention as will sustain a patent."

It is my conclusion that this patent is invalid.

■ The plaintiffs relied heavily on commercial success to prove patentability. It has been frequently stated that commercial success does not supply inventive genius to a device that has none, as is the case here. Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 498, 58 S.Ct. 291, 82 L.Ed. 382; Ainsworth v. Gill Glass & Fixture Co., 3 Cir., 106 F.2d 491, 495.

In view of the conclusion of invalidity in respect of the three patents in suit, it is unnecessary to consider the question of the defendant's infringement.

Judgment for the defendants, with costs.