## MOUNT HOPE FINISHING CO. v. SENECA TEXTILE CORPORATION.

District Court, S. D. New York.

July 21, 1941.

Pennie, Davis, Marvin & Edmonds, of New York City (Frank E. Barrows and Daniel L. Morris, both of New York City, and Mark M. Horblit and Lawrence G. Miller, both of Boston Mass., of counsel), for plaintiff.

Gifford, Scull & Burgess, of New York City (Newton A. Burgess and H. H. Hamilton, both of New York City, of counsel), for defendant.

GODDARD, District Judge.

This is a suit by Mount Hope Finishing Company, assignee of the Robertson and Staples patent 2,110,118 issued March 1, 1938, against the Seneca Textile Corporation charging both direct and contributory infringement. The patent concerns the finishing of textile fabrics, particularly the finishing of dotted marquisettes.

The claims in suit are 7 to 13 inclusive covering the finishing method and apparatus, and claims 14 and 15 covering the fabric or product.

A dotted marquisette fabric is an open-mesh fabric like mosquito netting, having a distinctive weave known as a leno weave with dots upon it. The open-mesh ground of the fabric is woven of small fine tightly twisted threads. The dots on dotted marquisette are made by interweaving relatively large rovings with the ground threads at the time the fabric is woven in the loom. The rovings are interwoven with a plurality of the ground threads at spaced intervals and are then sheared or clipped in a clipping machine to leave free the ends extending in both directions from the interwoven portion. This dotted marquisette fabric is chiefly used for window curtains for with its mosquito netting like construction it lets the light through and one may see through it. It has come into vogue in recent years and now has a large sale.

The defendant, Seneca Textile Corporation (later referred to as Seneca), has its dotted marquisette fabric finished for it by its wholly-owned subsidiary, Arkwright Corporation, a Massachusetts corporation, and sells the finished fabric.

The plaintiff, Mount Hope Finishing Company (later referred to as Mount Hope), charges that the Seneca is a direct infringer of the product claims of the patent through its sale of the finished fabric. Mount Hope further contends that Seneca is a contributory infringer of the method and apparatus claims, of which Arkwright Corporation is a direct infringer through its knowledge of and participation in such direct infringement. Mount Hope also contends that Seneca is a direct infringer of the process and apparatus claims through its domination and control and conduct of business of its subsidiary, Arkwright Corporation, as a department of its own business.

Seneca's defense is that the patent is invalid and that it is guilty of neither direct nor contributory infringement.

Dotted marquisette fabric has been known for many years. However, in 1934 the old-fashioned candlewick bed spread began to come more and more into vogue as manufacturers learned to manufacture them by machinery and so reducing the cost of making them that they became available in larger quantities than was possible when the dots were sewed in by hand. Prior to that time a dotted marquisette fabric was finished by subjecting it to preliminary processes of mercerization, bleaching, etc., and then starching or sizing by running the fabric through a mangle in which both the fabric ground and the dots were more or less saturated with the starch solution so that after drying the sized dots were stiffer than desired and somewhat matted. Most of the dotted marquisettes finished in this way had short clipped dots with the rovings clipped fairly close to the interwoven portion.

Two qualities are particularly desired in dotted marquisettes. One is that the dots shall be fluffy; the other that the ground fabric shall be sized or stiffened with starch so as to hang properly and not be raggy. Mount Hope's treatment or finishing consists of blowing air against the dots so as to separate the roving ends of the dot to make them fluffy, and then, according to the patent, applying sizing material "to the back of the fabric so as not to reach the raised fibers of the dot". As the fabric travels to the tenter frame with the dotted side of the fabric facing downwards, it passes over a narrow air slot which extends transversely and beneath the fabric subjecting it to compressed air at an acute angle to the direction of travel of the fabric and which blows against the dots separating the roving ends or loose ends of the yarn and fluffing up the dots.

"The fabric then passes to the tenter frame (Fig. 3) but before entering the frame is subjected to a sizing action, the size, however, being applied to the back of the fabric so as not to reach the raised fibers of the dots or affect the fluffed up appearance thereof. The size may be applied in any well known manner, but herein a transverse series of size delivery nozzles is employed to apply starch or other suitable size fed from any desired source, each nozzle being arranged in conjunction with an immediately adjacent aspirating air delivery nozzle, supplied with compressed air from any suitable source, to deliver against the back of the fabric a finely atomized spray of sizing". Patent p. 3, col. 1, line 73 et seq.

996

The use of compressed air for fluffing up fibers or nap is not new. Compressed air issuing through thin slot to raise and fluff the nap on velour hats has been used by the Stetson Hat Company since 1911. Steam under pressure has been used by the Mohawk Carpet Company to fluff up the nap on Axminister rugs since 1931, where the same sequence of fluffing, sizing and drying is employed.

British Patent No. 19,798 of 1889 in which the use of steam or air under pressure is projected "at a suitable angle" through a narrow slot against the face of the fabric to raise and dry it. Some of the claims in suit call for the use of air and some for gas, indicating that air and steam are treated as equivalents.

Mallory 1,052,934 of 1913 relates to a nap blowing attachment for clipping machines, which the patentee says is adapted for clipping machines generally and especially adapted to use upon hat clipping machines. It describes a blower which blows thin sheets of air under pressure against the nap to raise it; it also has a shield or bar, functionally similar to the bar used in the patent at issue to prevent the fabric from being bulged out by the force of the air against it.

Sizing on the back only of a fabric has been quite common for many years. Mount Hope, Arkwright and the Bradford Dyeing Association all used standard atomizing devices for spraying the sizing on to the dotted marquisette.

British patent 2573 of 1891, relates to "Improvements in Dressing or Stiffening Lace or Other Fabric", and the sizing is applied to the back of the lace or fabric with a roller which bears but lightly upon the fabric so that the dressing will not be pressed through the face of the fabric.

Goodall patent 209,805 of 1878 describes the application of sizing to the under side of plush on napped fabrics.

In the summer of 1934 the Royal Curtain Company employed the Bradford Dyeing Association to finish a marquisette with large billowy dots having large rovings and long shear. The Bradford Company did not puff up the dots with air but it did spray sizing on the back of the fabric directing the spray at an angle and "the force of the spraying being applied at an angle did not drive it through the cloth as much as it would have if it were directed towards the cloth". Between 50,000 and 100,000 yards of this material was finished and sold under the name "Royalwick" and curtains made of it were exhibited at the curtain material shows held in New York and in Chicago in July and August of that year.

Graham patent 2,128,516 was issued August 30, 1938, on application filed February 2, 1935, and Graham patent 2,155,127 was issued April 18, 1939, upon application filed August 23, 1938, but was a division of the original application of February 2, 1935. The reason for the division was that 2,128,-516 covered the method and the single claim in 2,155,127 covered the product. Both patents relate to the finishing of dotted marquisette and show the application of sizing to the back only. Goods made in accordance with the Graham claims were finished by Defiance Bleachery and sold in the market October 15, 1934.

Referring to the drawing of Graham patent 2,155,127 it appears that the dotted marquisette material passes under a guide roller, then over a starch roller, where the starch is supplied from a reservoir or bath, and applied to the ground cloth without reaching any part of the dots except the tie-in; then run immediately to the dryer, the time element being so regulated according to the specification that it is dried "before the finish or color can penetrate the raised figure or pattern on the face of the fabric * * *. If desired, the time duration of contact of the surface of the fabric with the roller and the initiation of the drying may be varied to affect the degree of penetration * * *". This product claim in Graham is identical with the product claims of the patent in suit except that it does not require the roving ends to be fluffed up over substantially the entire area of the dot. However, it would require no inventive genius to fluff them more by using compressed air or steam long employed for this purpose in connection with various nap and pile fabrics.

■ The Graham file wrappers were received in evidence at the time of the trial. They were offered upon the theory that they contained admissions against interest by the patentee's solicitor. They are not admissible for such purpose and should have been rejected and are now excluded. I have disregarded their contents. See Catalin Corporation of America v. Catalazuli Mfg. Co., 2 Cir., 79 F.2d 593.

Defendant urges that the patent in issue is also invalid because it does not comply

with Section 4888 of the Revised Statutes, 35 U.S.C.A. § 33, in that the disclosure is insufficient to enable persons skilled in the art to use it; particularly there is nothing disclosed as to how the size can be sprayed on the back only of the ground so as not to reach the raised fibers of the dot. The only instructions in the patent as to the means or methods for applying the sizing appear in page 3, column 1, line 73, and extending to line 12, in column 2, quoted above. There are no instructions as to how the size may be "applied to the back of the fabric so as not to reach the raised fibers of the dots or affect the fluffed up appearance thereof". The patent states the problem but does not tell how it is to be accomplished. Obviously, spraying sizing on to the back of an open-mesh fabric like marquisette without its passing through the openings and reaching the raised fibers of the dots presents a difficult problem, and plaintiff's patent does not give the solution. Plaintiff concedes that: "If there is one fact which is established in this case, it is the fact that it is impossible to atomize or spray starch against one side of an open mesh fabric like marquisette without having some of the starch reach the dots."

It seems to me that plaintiff's patent is vitally defective in its failure to give definite and specific instructions in this respect for the claims are limited to the roving ends being unsized or to the application of the size to the back of the fabric only or to both limitations. The Patent Office refused patentee claims broad enough to cover a fabric having dots whose condition was "unchanged". The answer of the plaintiff is that one skilled in the art knows how to regulate the amount of sizing, air pressure for the atomizers, angle at which the spray is directed, distance of sprays from the fabric, length and size of rovings and other variables so as to prevent the sizing from reaching the dots. And plaintiff says its dots have but a negligible amount of sizing on them; that in the practical art whether the dots are sized or unsized, is determined by their appearance and feel; that this test used by the trade is the proper one and that its dotted marquisettes meet such test except in rare instances where it may be necessary to refinish. The defendant contends that the only correct and true test is

a chemical test. While it appears that the "feel and appearance" test is the one generally adopted in the trade in deciding whether the goods are acceptable or not, such test is open to a good many qualifications and is quite indefinite. A fair and true test to determine whether the sizing is applied "so as not to reach the raised fibers of the dot" is a chemical test. If the "feel and appearance" test is the proper one to apply, then the Royal Curtain Company's "Royalwick" refutes the idea that there was anything novel in spraying the sizing on the back of the dotted marquisette so that only a small amount of sizing reach the roving ends.

The dots on the fabric produced by the Arkwright Corporation are not free from sizing; the sizing material penetrates through the meshes and reaches the dots and bathes them in a mist of sizing. A chemical test of the dots on the dotted marquisette put in evidence by the plaintiff as defendant's infringing fabric showed the dots contain seventy per cent as much starch by weight as in the ground, which concededly is sized.

The use of compressed air to fluff up nap and the sizing fabrics on one side only is old in the art, and I do not think the application of these operations to dotted marquisettes amounts to invention. Celanese Corp. v. Ribbon Narrow Fabrics Co., 2 Cir., 117 F.2d 481; Cutler Mail Chute Co. v. Capitol Mail Chute Corporation, 2 Cir., 118 F.2d 63; Anderson Co. et al. v. Lion Products Co., Inc., D.C., 36 F.Supp. 474. There was no new and useful result. The patent does not teach what it purports to and what would be a real contribution to the art of finishing dotted marquisettes; that is—how to apply sizing to the back of the fabric "so as not to reach the raised fibers of the dots". There is no novelty in the sequence of the operations; the same sequence has been followed for many years by the Mohawk Carpet Company in making their rugs. The claims in suit do not cover the details of the machine.

I think the patent in suit is invalid in view of the prior art and earlier patents; also that it is defective because the disclosure is insufficient.

A decree may be entered dismissing the bill of complaint.